Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
Hakop Stepanyan (State Bar No. 296782)
hstepanyan@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Attorneys for Defendant
LOS ANGELES TIMES COMMUNICATIONS LLC

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALIAH MIRMALEK, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LOS ANGELES TIMES COMMUNICATIONS LLC, <br><br> Defendant. | CASE NO.:  3:24-cv-01797 <br><br> **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1446 AND 1453** |

3:24-cv-01797

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1446 AND 1453

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Los Angeles Times Communications LLC (the "LA Times") hereby removes to this Court, pursuant to 28 U.S.C. §§ 1332, 1446, 1453 and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, the state court action described below.  In support thereof, the LA Times states as follows:

## I.

## <u>INTRODUCTION</u>

1.	On February 13, 2024, Plaintiff Taliah Mirmalek ("Plaintiff") filed this putative class action in the Superior Court of the State of California for the County of Alameda, styled as *Taliah Mirmalek v. Los Angeles Times Communications LLC*, Case No. 24CV063701 (the "State Action").  Plaintiff served the LA Times with the Summons and Class Action Complaint (the "Complaint") on February 22, 2024.

2.	Plaintiff asserts a single claim against the LA Times for violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a).  Plaintiff claims the LA Times violated Section 638.51(a) because it allegedly installed "pen registers" on users' browsers to collect IP addresses without the users' consent or a court order.  Compl. ¶¶ 101-110.

3.	On behalf of herself and the putative class, Plaintiff seeks, among other things, statutory damages of $5,000 for each violation of CIPA § 638.51(a), pre- and post-judgment interest, restitution and all other forms of equitable monetary relief, and attorneys' fees and costs.  Compl., Prayer for Relief.

4.	The LA Times denies the allegations in the Complaint, denies Plaintiff has stated a claim for which relief may be granted, and denies Plaintiff has suffered damages in any manner whatsoever.  Nevertheless, assuming for jurisdictional purposes only that Plaintiff's claim is valid, the State Action is removable to this Court because all procedural requirements for removal are satisfied, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

## II.

## THE PROCEDURAL REQUIREMENTS

## FOR REMOVAL ARE SATISFIED

5.     Plaintiff served the LA Times with the Complaint on February 22, 2024.  This Notice of Removal is timely because it is filed within 30 days of the date of service.  28 U.S.C. § 1446(b) (timing for removal).

6.     Venue lies in the United States District Court for the Northern District of California because Plaintiff filed the State Action in this district.  28 U.S.C. § 1446(a) (mandating venue for removed actions).

7.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on the LA Times, which include the Summons and Complaint, are filed as attachments hereto.

8.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff's counsel and filed with the Clerk of the Superior Court of the State of California for the County of Alameda.

## III.

## REMOVAL IS PROPER BECAUSE THIS COURT

## HAS SUBJECT MATTER JURISDICTION

9.     This Court has original jurisdiction over the State Action pursuant to CAFA.  Under CAFA, federal courts have original jurisdiction over a class action if:  (a) it involves 100 or more putative class members; (b) any class member is a citizen of a state different from any defendant (*i.e.*, minimal diversity exists); and, (c) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).  The State Action meets those requirements.

10.     To remove a case under CAFA, a defendant need only "file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal'"—*i.e.*, the same "liberal" pleading standard required by Federal Rule of Civil Procedure 8(a), requiring only plausible allegations as to the basis for removal.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)).  The LA Times meets that standard.

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1446 AND 1453

11.    As set forth below, this is a putative class action in which, as alleged:  (a) there are more than 100 members in Plaintiff's proposed class; (b) at least one putative class member has a different citizenship than the LA Times; and (c) the claims of the proposed class members exceed the sum or value of $5 million in the aggregate, exclusive of interest and costs.  Accordingly, removal is proper because this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

**A.    The State Action Is A "Class Action" Under CAFA**

12.    CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule or judicial procedure authorizing an action to be brought by one or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

13.    Here, the Complaint is styled as a "Class Action Complaint;" Plaintiff specifically alleges that she is bringing the State Action individually and "on behalf of all others similarly situated" (Compl. at 2); Plaintiff purports to set forth class allegations under Cal. Civ. Proc. Code § 382 (*id.* ¶¶ 94-100); and Plaintiff alleges "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class" (*id.* ¶ 100).  Actions seeking class treatment in this manner are "class actions" under CAFA.  *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018) ("Here, there is no dispute the present action is a 'class action' under CAFA, as the action contains class allegations under California Code of Civil Procedure § 382.").

**B.    The Putative Class Consists Of More Than 100 Members**

14.    Plaintiff seeks to represent a putative class of "all California residents who accessed the Website in California and had their IP address collected by the Trackers."  Compl. ¶ 94.

15.    Plaintiff expressly alleges "[t]he number of people within the Class is substantial and believed to amount to thousands, if not millions of persons."  Compl. ¶ 96.  Based on Plaintiff's own allegation, the requirement of 100 or more putative class members is met.

**C.    Minimal Diversity Exists**

16.    Under CAFA's "minimal diversity" requirement, a "federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1446 AND 1453

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

from any defendant,'" or a citizen or subject of a foreign state.  *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014) (quoting 28 U.S.C. § 1332(d)(2)(A)); *Duran v. Fernandez Bros.*, 2015 WL 7012884, at *3 (N.D. Cal. Nov. 12, 2015) (denying motion to remand because CAFA's minimal diversity requirement was satisfied where removing defendant alleged that some putative class members were "citizens or subjects of a foreign state.").

17.      The LA Times is a limited liability company ("LLC").  "A limited liability company is a citizen of every state of which its owners/members are citizens, not the state in which it was formed or does business."  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016); *see also Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").  If any member of an LLC is itself a partnership or association (or another LLC), courts look to the citizenship of each "sub-member" as well.  *See V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010) ("[B]ecause a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well.").

18.      The LA Times has one member only, NantMedia Holdings, LLC.  NantMedia Holdings, LLC, in turn, has one member only—a trust whose trustees are domiciled in California.  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A trust has the citizenship of its trustee or trustees.").  The LA Times thus is a citizen of California for diversity purposes.  Accordingly, minimal diversity exists under CAFA if any member of the proposed class is a citizen of a State other than California, or a citizen or subject of a foreign state.  28 U.S.C. § 1332(d)(2)(A), (d)(2)(B); *Hood*, 571 U.S. at 165; *Duran*, 2015 WL 7012884, at *3.

19.      For purposes of CAFA's requirements, citizenship, not residence matters.  Whereas citizens intend to be permanently domiciled in a home state, not every resident of a state is a citizen for diversity purposes.  Citizenship is determined by the person's state of permanent domicile, not the state of residence, which may be transitory.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  *Id.*  For example, foreign nationals, alien residents,

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1446 AND 1453

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

seasonal workers, visiting students, and military personnel temporarily assigned to the state, are residents of the state, not citizens. *Id.* ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode. . . .") (citing *Weible v. U.S.*, 244 F.2d 158, 163 (9th Cir. 1957)).

20. Here, Plaintiff alleges a class of California *residents*. Compl. ¶ 94 (defining putative class to include "all California residents who accessed the Website in California and had their IP address collected by the Trackers"). Thus, Plaintiff's proposed class definition necessarily includes non-California *citizens* who merely reside in California.

21. An unknown number of putative class members who accessed the LA Times' website are non-California citizens who reside in California. California is a large state with a fluctuating and migratory population that includes millions of registered aliens, undocumented workers, students, military personnel, foreign diplomats, and people who temporarily reside in California for work—all of whom reside in California, but are not citizens for purposes of diversity. Even a single non-citizen putative class member satisfies the statutory requirement for minimal diversity. This test is easily met.

22. For example, California has approximately 2,890,000 lawful permanent residents.[1] These "lawful permanent residents cannot be considered citizens of [California] because they are, by definition, *not* U.S. citizens." *Duran*, 2015 WL 7012884, at *3 (emphasis in original). The LA Times alleges that at least one lawful permanent resident accessed the LA Times' website. *Id.* Further, there are approximately 1,750,000 undocumented workers residing in California,[2] none of whom are citizens for purposes of diversity. The LA Times alleges that at least one undocumented worker (who, by definition, is a resident, but not a citizen of California) accessed the LA Times' website. 28 U.S.C. § 1332 (d)(2)(B).

---

[1] *See* U.S. Dept. of Homeland Security, Estimates of the Lawful Permanent Resident Population in the United States and the Subpopulation Eligible to Naturalize: 2023 (available at https://www.dhs.gov/ohss/topics/immigration/population-estimates/lawful-permanent-residents) (last visited March 22, 2024).

[2] *See* Public Policy Institute of California, Undocumented Immigrants in California (available at https://www.ppic.org/publication/undocumented-immigrants-in-california/) (last visited March 22, 2024).

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1446 AND 1453

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

23.     Similarly, there is a large population of non-citizen students residing in California who intend to return to their permanent homes elsewhere in the United States or abroad in the future. For example, in 2013, more than 58,000 non-resident students attended schools in the University of California system alone.[3]  The LA Times alleges that at least one of these students accessed the LA Times' website, thus creating minimal diversity.

24.     Likewise, the resident military presence in California also includes a large population of military personnel temporarily residing in California at local military bases.  There are approximately 158,754 military active-duty personnel that reside in California.[4]  The LA Times alleges that at least one member of that non-permanent population accessed the LA Times' website. Minimal diversity exists for that additional reason.

25.     Further, there are 73 diplomatic missions located in Los Angeles, California alone.[5] Personnel of these embassies reside in California, but they are citizens of foreign states.  The LA Times alleges that at least one foreign diplomat accessed the LA Times' website.

26.     Finally, there are many people, such as police officers and firefighters, who are domiciled outside of California but still reside in California temporarily for work.[6]  The LA Times alleges that at least one such individual accessed the LA Times' website.

---

[3] *See* University of California Fall Enrollment at a Glance (available at https://www.universityofcalifornia.edu/about-us/information-center/fall-enrollment-glance) ("Residency and Demographics" tab) (last visited March 22, 2024).

[4] *See* Statista, Geographic stationing of active duty United States Armed Forces personnel in 2022, by U.S. state (available at https://www.statista.com/statistics/232722/geographic-stationing-of-active-duty-us-defense-force-personnel-by state/#:~:text=U.S.%20stationing%20of%20active%20duty%20Armed%20Forces%20personnel%20 2022%2C%20by%20state&text=In%202022%2C%20there%20were%20around,the%20most%20of %20any%20state) (last visited March 22, 2024).

[5] *See* Embassies in Los Angeles (available at https://embassies.net/united-states/los-angeles) (last visited March 22, 2024).

[6] *See* "California Cops and Firefighters are Taking Their Pensions to Idaho's 'Little Orange County'" (available at https://www.latimes.com/california/story/2023-12-21/california-cops-firefighters-flee-california-take-pensions-to-eagle-idaho) (last visited March 22, 2024); "California Commute:  Many "First Responders are Travelling Back and Forth from California to Idaho for Work" (available at https://www.ktvb.com/article/news/local/california-commute-many-first-responders-are-travelling-back-and-forth-from-california-idaho-for-work/277-c6ceb713-8263-4df7-b198-207608056720) (last visited March 22, 2024).

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1446 AND 1453

27.    And that does not even include individuals temporarily working and residing in California with no plans to reside here permanently (*e.g.*, nurses, individuals working in the film industry, etc.).  As shown above, millions of non-California citizens "reside" in this State, and, accordingly, fall within Plaintiff's class definition.  The LA Times alleges that at least one accessed the LA Times' website, thereby satisfying CAFA's requirement of minimal diversity.

### D.    The Amount-In-Controversy Requirement Is Satisfied

28.    To establish CAFA's amount-in-controversy requirement, the LA Times "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million.  *Dart Cherokee*, 574 U.S. at 89.

29.    Although the LA Times denies Plaintiff or any putative class member suffered any cognizable injury as a result of accessing the LA Times' website, Plaintiff asserts a claim for violation of section 638.51(a) of CIPA.  Compl. ¶¶ 101-110.  In connection with this claim, Plaintiff seeks, among other things, statutory damages of $5,000 for each violation of CIPA § 638.51(a), pre- and post-judgment interest, restitution and all other forms of equitable monetary relief, and attorneys' fees and costs.  *Id.*, Prayer for Relief.

30.    Statutory damages under CIPA alone satisfy CAFA's $5 million amount-in-controversy requirement.  Plaintiff alleges "[t]he number of people within the Class is substantial and believed to amount to thousands, if not millions of persons."  Compl. ¶ 96.  Based on Plaintiff's allegation, the proposed class consists of at least 2,000 members.  Even assuming only a single violation of CIPA for each putative class member, that amounts to $10 million in statutory damages.  And the LA Times avers that its website has had more than 2,000 unique visitors within the past year.  Accordingly, assuming even the smallest possible class and focusing on only one of Plaintiff's demands for damages, CAFA's $5 million amount-in-controversy requirement is satisfied.

31.    As all requirements under CAFA are met, removal to this Court is proper.

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

**WHEREFORE**, the LA Times removes the State Action to this Court, pursuant to 28 U.S.C. §§ 1332, 1446, and 1453.

Dated:  March 22, 2024                      **HUNTON ANDREWS KURTH LLP**

By:     */s/ Ann Marie Mortimer*
         Ann Marie Mortimer
         Jason J. Kim
         Hakop Stepanyan
      Attorneys for Defendant
      LOS ANGELES TIMES
      COMMUNICATIONS LLC

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

**EXHIBIT 1**



# Superior Court of Alameda County Public Portal

**24CV063701** MIRMALEK vs LOS ANGELES TIMES COMMUNICATIONS LLC

**Civil Unlimited** (Other Non-Personal Injury/Pro...)

Rene C. Davidson Courthouse / DEPT 21 - HON. Noël Wise

Filed: 02/13/2024

Next Hearing: 03/24/2025 Initial Case Management Conference

Upload Document

Document Download    Pay Fees

## Case Summary

Register of Actions    Participants    Future Hearings

| Date | Message | Category | Download |
|---|---|---|---|
| 02/13/2024 | Complaint<br>Filed by: Taliah Mirmalek (Plaintiff)<br>As to: Los Angeles Times Communications LLC (Defendant) | Document | ⬇ |
| 02/13/2024 | Civil Case Cover Sheet<br>Filed by: Taliah Mirmalek (Plaintiff)<br>As to: Los Angeles Times Communications LLC (Defendant) | Document | ⬇ |
| 02/13/2024 | Summons on Complaint<br>Issued and Filed by: Taliah Mirmalek (Plaintiff)<br>As to: Los Angeles Times Communications LLC (Defendant) | Document | ⬇ |
| 02/13/2024 | Notice of Case Management Conference<br>Filed by: Clerk | Document | ⬇ |
| 02/13/2024 | The case is placed in special status of: Class Action | Case | |
| 02/13/2024 | The case is placed in special status of: Provisionally Complex – Case Type | Case | |
| 02/14/2024 | Complex Determination Hearing scheduled for 03/18/2024 at 03:30 PM in Rene C. Davidson Courthouse at Department 21 | Event | |
| 02/14/2024 | Initial Case Management Conference scheduled for 06/17/2024 at 08:30 AM in Rene C. Davidson Courthouse at Department 21 | Event | |
| 02/14/2024 | Case assigned to Hon. Noël Wise in Department 21 Rene C. Davidson Courthouse | Assignment | |
| 02/26/2024 | Proof of Personal Service<br>Filed by: Taliah Mirmalek (Plaintiff)<br>As to: Los Angeles Times Communications LLC (Defendant)<br>Service Cost: 266.13<br>Service Date: 02/22/2024<br>Service Cost Waived: No | Document | ⬇ |
| 02/28/2024 | Tentative Ruling Published for 03/18/2024 3:30 PM Complex Determination Hearing} | Tentative Ruling | |
| 02/28/2024 | Tentative Ruling Published for 03/18/2024 3:30 PM Complex Determination Hearing} | Tentative Ruling | |
| 03/18/2024 | Initial Case Management Conference Order<br>Issued and Filed by: Clerk | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 03/18/2024 | Updated -- Initial Case Management Conference Order: Status changed from Issued and Filed to Signed and Filed | Document | ⬇ |
| 03/18/2024 | Minute Order (Complex Determination Hearing filed by Taliah Mirmalek (Plain...) | Minute Order | ⬇ |
| 03/18/2024 | Order re: Complex Determination Hearing filed by Taliah Mirmalek (Plaintiff) on 02/13/2024 Signed and Filed by: Court | Document | ⬇ |
| 03/19/2024 | Initial Case Management Conference scheduled for 03/24/2025 at 01:30 PM in Rene C. Davidson Courthouse at Department 21 | Event | |
| 03/19/2024 | The case is placed in special status of: Deemed Complex | Case | |
| 03/19/2024 | Complex Determination Hearing scheduled for 03/18/2024 at 03:30 PM in Rene C. Davidson Courthouse at Department 21 updated: Result Date to 03/18/2024 Result Type to Held | Event | |
| 03/19/2024 | Initial Case Management Conference scheduled for 06/17/2024 at 08:30 AM in Rene C. Davidson Courthouse at Department 21 Not Held - Rescheduled by Court was rescheduled to 03/24/2025 01:30 PM | Event | |

Terms of Service

Contact Us
About this Site
Copyright © Journal Technologies, USA. All rights reserved.

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
02/13/2024 at 12:00:00 AM
By: Milagros Cortez,
Deputy Clerk

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
      ehorne@bursor.com

*Attorneys for Plaintiff*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| TALIAH MIRMALEK, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>               Defendant. | Case No.   24CV063701<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

---

Plaintiff Taliah Mirmalek ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant Los Angeles Times Communications LLC ("Defendant") owns and operates a website, LATimes.com (the "Website" or "LA Times").

2. When users visit the Website, Defendant causes three trackers—the TripleLift Tracker, GumGum Tracker, and Audiencerate Tracker (collectively, the "Trackers")—to be installed on Website visitors' internet browsers. Defendant then uses these Trackers to collect Website visitors' IP addresses.

3. Because the Trackers capture Website visitors' "routing, addressing, or signaling information," the Trackers each constitute a "pen register" under Section 638.50(b) of the California Invasion of Privacy Act ("CIPA"). Cal. Penal Code § 638.50(b); s*ee also Greenley v. Kochava, Inc.*, 2023 WL 4833466 (S.D. Cal. July 27, 2023).

4. By installing and using the Trackers without Plaintiff's prior consent and without a court order, Defendant violated CIPA § 638.51(a).

5. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages for Defendant's violation of CIPA § 638.51.

## PARTIES

6. Plaintiff Mirmalek resides in Oakland, California and has an intent to remain there, and is therefore a citizen of California. Plaintiff Mirmalek was in California when she visited the Website.

7. Defendant Los Angeles Times Communications LLC is a Delaware Limited Liability Company, with its principal place of business located in California.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to Article VI, Section 10 of the California Constitution and Cal. Code Civ. Proc. § 410.10.  This action is brought as a class action on behalf of Plaintiff and Class Members pursuant to Cal. Code Civ. Proc. § 382.

9.      This Court has personal jurisdiction over Defendant because it is headquartered and conducts business in this State.

10.      Venue is proper in this District because the conduct alleged in this Complaint occurred in this County.

**FACTUAL ALLEGATIONS**

**I.      THE CALIFORNIA INVASION OF PRIVACY ACT**

11.      The California Legislature enacted CIPA to protect certain privacy rights of California citizens.  The California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

12.      As relevant here, CIPA § 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

13.      A "pen register" is a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  Cal. Penal Code § 638.50(b).

14.      A "trap and trace device" is a "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  Cal. Penal Code § 638.50(b).

15.      In plain English, a "pen register" is a "device or process" that records *outgoing* information, while a "trap and trace device" is a "device or process" that records *incoming* information.

16.     Historically, law enforcement used "pen registers" to record the numbers of outgoing calls from a particular telephone line, while law enforcement used "trap and trace devices" to record the numbers of incoming calls to that particular telephone line.  As technology advanced, however, courts have expanded the application of these surveillance devices.

17.     For example, if a user sends an email, a "pen register" might record the email address it was sent from, the email address the email was sent to, and the subject line—because this is the user's *outgoing* information.  On the other hand, if that same user receives an email, a "trap and trace device" might record the email address it was sent from, the email address it was sent to, and the subject line—because this is *incoming* information that is being sent to that same user.

18.     Although CIPA was enacted before the dawn of the Internet, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley*, 2023 WL 4833466, at *15 (referencing CIPA's "expansive language" when finding software was a "pen register"); *Javier v. Assurance IQ*, LLC, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications.").  This accords with the fact that, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

19.     Individuals may bring an action against the violator of any provision of CIPA—including CIPA § 638.51—for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).

## II.     DEFENDANT VIOLATES THE CALIFORNIA INVASION OF PRIVACY ACT

### A.     The Trackers Are "Pen Registers"

20.     To make Defendant's Website load on a user's internet browser, the browser sends an "HTTP request" or "GET" request to Defendant's server where the relevant Website data is stored. In response to the request, Defendant's server sends an "HTTP response" back to the browser with a set of instructions.  *See* Figure 1.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                    4

**Figure 1:**



21. The server's instructions include how to properly display the Website—*e.g.*, what images to load, what text should appear, or what music should play.

22. In addition, the server's instructions cause the Trackers to be installed on a user's browser. The Trackers then cause the browser to send identifying information—including the user's IP address—to TripleLift, GumGum, and Audiencerate.

23. The IP address is a unique identifier for a device, which is expressed as four sets of numbers separated by periods (*e.g.*, 192.168.123.132). The first two sets of numbers indicate what network the device is on (*e.g.*, 192.168), and the second two sets of numbers identify the specific device (*e.g.*, 123.132). Thus, the IP address enables a device to communicate with another device— such as a computer's browser communicating with a server—and the IP address contains geographical location. Through an IP address, the device's state, city, and zip code can be determined.

24. As alleged below, Defendant installs each of the Trackers on the user's browser, and the Trackers collect information—users' IP addresses—that identifies the outgoing "routing, addressing, or signaling information" of the user. Accordingly, the Trackers are each "pen registers."

       *1.    TripleLift Tracker*

25. TripleLift is a software-as-a-service company that develops the TripleLift Tracker, which it provides to website owners, like Defendant, for a fee.

26. According to TripleLift, its "technology powers ads that make advertising better for everyone—higher performing for brands, more lucrative for publishers and more respectful of the

consumer's experience."[1]

27.    In other words, TripleLift enables companies to sell advertising space on their websites, thereby earning revenue, and allows companies to place advertisements on other companies' websites, thereby driving brand awareness and sales.  To achieve this, TripleLift uses its Tracker to receive, store, and analyze information collected from website visitors, such as visitors of Defendant's Website.

28.    The first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends an HTTP response with directions to install the TripleLift Tracker on the user's browser.  The TripleLift Tracker, in turn, instructs the user's browser to send TripleLift the user's IP address.

29.    Moreover, TripleLift stores a cookie with the user's IP address in the user's browser cache.  When the user subsequently visits Defendant's Website, the TripleLift Tracker instructs the user's browser to send the user's IP address through the cookie.  *See* Figure 2.

**Figure 2:**



30.    If the user clears his or her cookies, then the user wipes out the TripleLift Tracker from its cache.  Accordingly, the next time the user visits Defendant's Website the process begins over again: (i) Defendant's server installs the TripleLift Tracker on the user's browser, (ii) the TripleLift Tracker instructs the browser to send TripleLift the user's IP address, (iii) the TripleLift Tracker stores a cookie in the browser cache, and (iv) TripleLift will continue to receive the user's IP address on subsequent Website visits through the cookie.

---

[1] *Technology*, TRIPLELIFT, https://triplelift.com/technology (last visited Jan. 9, 2024).

31.     In all cases, however, TripleLift receives a user's IP address each and every time a user interacts with the website of one of TripleLift's clients, including Defendant's Website.  Indeed, the IP address is transmitted to TripleLift along with the cookie value, as the below screenshot indicates.  *See* Figure 3.

**Figure 3:**



32.     The TripleLift Tracker is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data."  *Greenley*, 2023 WL 4833466, at *15.

33.     Further, the TripleLift Tracker is a "device" because "in order for software to work, it must be run on some kind of computing device."  *James v. Walt Disney Co.*, --- F. Supp. 3d ---,

2023 WL 7392285, at *13 (N.D. Cal. Nov. 8, 2023).

34.    Because the TripleLift Tracker captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of CIPA§ 638.50(b).

2.    *GumGum Tracker*

35.    GumGum, Inc. ("GumGum") is a software-as-a-service company that develops the GumGum Tracker, which it provides to website owners like Defendant for a fee.

36.    According to GumGum, it "delivers the next generation of contextual intelligence, industry leading ad creatives, and the ability to measure and optimize advertising campaigns to better understand a consumer's mindset that captures attention and drives action and outcomes."[2]

37.    In other words, GumGum enables companies to sell advertising space on their websites, thereby earning revenue, and allows companies to place advertisements on other companies' websites, thereby driving brand awareness and sales.  To achieve this, GumGum uses its Tracker to receive, store, and analyze information collected from website visitors, such as visitors of Defendant's Website.

38.    The first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends an HTTP response with directions to install the GumGum Tracker on the user's browser.  The GumGum Tracker, in turn, instructs the user's browser to send GumGum the user's IP address.

39.    Moreover, GumGum stores a cookie with the user's IP address in the user's browser cache.  When the user subsequently visits Defendant's Website, the GumGum Tracker instructs the user's browser to send the user's IP address through the cookie.  *See* Figure 2, *supra*.

40.    If the user clears his or her cookies, then the user wipes out the GumGum Tracker from its cache.  Accordingly, the next time the user visits Defendant's Website the process begins over again: (i) Defendant's server installs the GumGum Tracker on the user's browser, (ii) the GumGum Tracker instructs the browser to send GumGum the user's IP address, (iii) the GumGum Tracker stores a cookie in the browser cache, and (iv) GumGum will continue to receive the user's IP address on subsequent Website visits through the cookie.

---

[2] *About*, GUMGUM, https://gumgum.com/about (last visited Jan. 4, 2024).

41.     In all cases, however, GumGum receives a user's IP address each and every time a user interacts with the website of one of GumGum's clients, including Defendant's Website.  Indeed, the IP address is transmitted to GumGum along with the cookie value, as the below screenshot indicates.  *See* Figure 4.

**<u>Figure 4:</u>**

42.     The GumGum Tracker is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data."  *Greenley*, 2023 WL 4833466, at *15.

43.     Further, the GumGum Tracker is a "device" because "in order for software to work, it must be run on some kind of computing device."  *James v. Walt Disney Co.*, --- F. Supp. 3d ---, 2023 WL 7392285, at *13 (N.D. Cal. Nov. 8, 2023).

44.    Because the GumGum Tracker captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of CIPA § 638.50(b).

3.    *Audiencerate Tracker*

45.    Audiencerate LTD ("Audiencerate") is a software-as-a-service company that develops the Audiencerate Tracker, which it provides to website owners like Defendant for a fee.

46.    According to Audiencerate, it "enable[s] data-driven advertising via [its] proprietary technology and platforms."[3]

47.    "One side of [Audiencerate's] business is dedicated to helping data owners monetize their data and license audiences in the world's largest programmatic media buying marketplaces. The other side provides targeting data to marketers, enabling them to model and target audiences with more complexity and sophistication."[4]

48.    Just like TripleLift and GumGum, Audiencerate uses its Tracker to receive, store, and analyze data collected from website visitors, including visitors of Defendant's Website.

49.    The first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends the HTTP response.  This response also includes directions to install the Audiencerate Tracker on the user's browser.  The Audiencerate Tracker, in turn, instructs the user's browser to send the user's IP address to Audiencerate.

50.    Moreover, Audiencerate stores a cookie with the user's IP address in the user's browser cache.  When the user subsequently visits Defendant's Website, the Audiencerate Tracker instructs the user's browser to send the user's IP address through the cookie.  *See* Figure 2, *supra*.

51.    If the user clears his or her cookies, then the user wipes out the Audiencerate Tracker from its cache.  Accordingly, the next time the user visits Defendant's Website the process begins over again: (i) Defendant's server installs the Audiencerate Tracker on the user's browser, (ii) the Audiencerate Tracker instructs the browser to send Audiencerate the user's IP address, (iii) the Audiencerate Tracker stores a cookie in the browser cache, and (iv) Audiencerate will continue to

---

[3] AUDIENCERATE, https://www.audiencerate.com/ (last visited Jan. 4, 2024).

[4] *AWS Enables Audiencerate to Process Over a Billion Requests per Week*, AWS (2020), https://aws.amazon.com/solutions/case-studies/audiencerate-case-study/.

---

receive the user's IP address on subsequent Website visits through the cookie.

52.    In all cases, however, Audiencerate receives a user's IP address each and every time a user interacts with the website of one of Audiencerate clients, including Defendant's Website.

53.    Indeed, the IP address is transmitted to Audiencerate along with the cookie value. *See* Figure 5.

**Figure 5:**



54.    The Audiencerate Tracker is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data." *Greenley*, 2023 WL 4833466, at *15.

55.    Further, the Audiencerate Tracker is a "device" because "in order for software to work, it must be run on some kind of computing device." *James*, 2023 WL 7392285, at *13.

56.    Because the Audiencerate Tracker captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of CIPA§ 638.50(b).

**B.    Defendant Installed And Used The Trackers On Plaintiff's And Class Members' Browsers Without Prior Consent Or A Court Order**

57.    Defendant owns and operates the Website, which boasts "more than 40 million unique

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    11

… visitor[s] monthly."[5]

58.    The Website provides local, state, national, and international news, as well as online games, short documentaries, op-eds, entertainment and arts information, obituaries, and recipes.

59.    When companies build their websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions.[6]

60.    Often times, third-party scripts are installed on websites "for advertising purposes."[7]

61.    Further, "[i]f the same third-party tracker is present on many sites, it can build a more complete profile of the user over time."[8]

62.    Since at least February 2023, if not earlier, Defendant has incorporated the code of the Trackers into the code of its Website.  Thus, when Plaintiff visited the Website, the Website caused the Trackers to be installed on Plaintiff's and other users' browsers.

63.    As outlined above, when a user visits the Website, the Website's code—as programmed by Defendant—installs the Trackers onto the user's browser.

64.    Upon installing the Trackers on its Website, Defendant uses the Trackers to collect the IP address of visitors to the Website, including the IP address of Plaintiff and Class Members. *See* Figures 6 (TripleLift Tracker), 7 (GumGum Tracker), and 8 (Audiencerate Tracker).

---

[5] *About The Los Angeles Times*, LOS ANGELES TIMES, https://www.latimes.com/about (last visited Jan. 4, 2024).

[6] *See* THIRD-PARTY TRACKING, https://piwik.pro/glossary/third-party-tracking/ ("Third-party tracking refers to the practice by which a tracker, other than the website directly visited by the user, traces or assists in tracking the user's visit to the site. Third-party trackers are snippets of code that are present on multiple websites. They collect and send information about a user's browsing history to other companies…").

[7] *Id*.

[8] *Id*.

**Figure 6:**

**Figure 7:**

**Figure 8:**



65.    Defendant then uses the IP address of Website visitors, including those of Plaintiff and Class Members, to serve targeted advertisements and conduct website analytics.

66.    At no time prior to the installation and use of the Trackers on Plaintiff's and Class Members' browsers, or prior to the use of the Trackers, did Defendant procure Plaintiff's and Class Members' consent for such conduct.  Nor did Defendant obtain a court order to install or use the Trackers.

**C.    Defendant's Conduct Constitutes An Invasion Of Plaintiff's And Class Members' Privacy**

67.    The collection of Plaintiff's and Class Members personally identifying, non-anonymized information through Defendant's installation and use of the Trackers constitutes an invasion of privacy.

68.    As alleged herein, the Trackers are designed to analyze Website data and marketing campaigns, conduct targeted advertising, and boost Defendant's revenue, all through their surreptitious collection of Plaintiff's and Class Members' data.

*1.    Defendant Discloses User's Data To TripleLift For The Purpose Of Marketing, Advertising, And Analytics*

69.    TripleLift describes itself as a digital advertising platform that "work[s] for everyone: publishers who seek greater monetization, advertisers who require better performance, [and] consumers who want better ad experiences."[9]

70.    TripleLift helps companies like Defendant market, advertise, and analyze user data from its website.  For example, TripleLift enables publishers to place advertisements on their webpages, in videos, or embedded in broadcasts.  To ensure that an effective advertisement is shown to the consumer, the publisher shares data about the user with TripleLift and TripleLift serves the targeted ad.[10]

71.    TripleLift also helps advertisers select where to place their ads through "TripleLift Audiences," which "span[s] third-party and first-party data."[11]  In other words, TripleLift utilizes

[9] *Who We Are*, TRIPLELIFT, https://triplelift.com/company (last visited Jan. 9, 2024).

[10] *See Smart Data & Targeting For Publishers*, TRIPLELIFT, https://triplelift.com/products/audiences-publishers (last visited Jan. 9, 2024).

[11] *Smart Data & Targeting For Advertisers*, TRIPLELIFT, https://triplelift.com/products/audiences-advertisers (last visited Jan. 9, 2024).

third-party data, as well as data from the publisher where the ad is ultimately placed (*i.e.*, first-party), to determine where to place advertisers' ads and who to place them in front of.

72.    By way of example, if a home-goods brand wants to use TripleLift to serve its ads, it can purchase TripleLift's "Home Curated Deal" to reach "people who are investing their time and money close to home."[12]  By choosing this set of data, the home-goods brand will be able to target "audiences spending time on home improvement, home entertaining, outfitting their setups, browsing real estate, raising kids and adopting pets."[13]  This data set can be used for ads in the "Native, Display and Video" formats, "in placements known to deliver high viewability and high video completion rates."[14]  TripleLift ensures that the data sets "are refreshed on an on-going basis so that only the highest performing placements are included."[15]

73.    In other words, when users visit Defendant's Website, Defendant utilizes the TripleLift Tracker to collect IP addresses so that Defendant can analyze user data, create and analyze the performance of marketing campaigns, and target specific users or specific groups of users for advertisements.  All of this helps Defendant further monetize its Website and maximize revenue by collecting and disclosing user information.

2.    *Defendant Discloses User's Data To GumGum For The Purpose Of Marketing, Advertising, And Analytics*

74.    GumGum is a digital advertising platform that prides itself on its "ability to measure and optimize advertising campaigns to better understand a consumer's mindset that captures attention and drives action and outcomes."[16]

75.    GumGum helps companies like Defendant market, advertise, and analyze user data from its website.  One way GumGum assists with marketing and advertising is through its Ad Exchange, which is a direct marketplace where publishers and advertisers can buy and sell digital

---

[12] *HOME*, TRIPLELIFT, https://triplelift.com/exchange-traded-deals/home (last visited Jan. 9, 2024).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *About*, GUMGUM, https://gumgum.com/about (last visited Jan. 3, 2024).

---

advertising space.[17]    Thus, when a user enters a website, GumGum enables companies to instantaneously buy and sell ad space in a way that it optimized to the particular user.

76.    According to GumGum, it uses artificial intelligence to scan the information on a web page to "deliver ads that are always relevant and align with what users are watching, reading and browsing online."[18]  GumGum boasts that their "solution offers higher quality ads and increased scale across thousands of premium publisher sites" and "allow[s] advertisers to maximize their KPIs by targeting audience through customized segments such as multicultural and sustainability."[19]

77.    GumGum also offers companies "Attention Metrics," which analyzes "the amount of time and focus an individual gives to a particular advertisement or piece of content."[20]  This allows companies to "[t]arget consumers where they are most attentive, ensuring maximum performance and ad relevance for [its] brand."[21]  Thus, GumGum "helps advertisers optimize ad delivery to places where consumer attention is highest … [and] presents a wealth of opportunities to optimize campaign results [and] amplify brand lift."[22]

78.    In order to perform the functions listed above, GumGum needs to collect data that identifies a particular user.  This is why GumGum collects IP addresses: it allows GumGum to ascertain a user's location and target that user with advertisements tailored to their location, as well as to track a user's Website activity over time (*i.e.*, through repeated Website visits) to target a user with advertisements relevant to the user's personal browsing activity.

79.    Notably, GumGum claims that it uses "cookieless targeting" to drive significant brand KPIs, thereby not collecting personal identifiable information.[23]  However, GumGum is setting a visitor cookie for the user session, which transmits a user's IP addresses and other pieces of

---

[17] *Exchange*, GUMGUM, https://gumgum.com/exchange (last visited Jan. 3, 2024).

[18] *Contextual vs. Behavioral Targeting*, GUMGUM (Dec. 29, 2022), https://gumgum.com/blog/contextual-vs-behavioral-targeting.

[19] *GumGum Annoucnes Industry's First 100% Brand Safe Ad Exchange*, GUMGUM (March 15, 2023), https://gumgum.com/press-releases/brand-safe-exchange.

[20] *Attention*, GUMGUM, https://gumgum.com/attention (last visited Jan. 3, 2024).

[21] *Id.*

[22] *Id.*

[23] *Verity*, GUMGUM, https://gumgum.com/verity (last visited Jan. 3, 2024).

---

information.  *See* Figure 9.



**Figure 9:**

80.     Indeed, GumGum is actually listed as a cookie when using browser developer tools to examine the Website.  *See* Figure 10.

**Figure 10:**



81.    In other words, when users visit Defendant's Website, Defendant utilizes the GumGum Tracker to collect IP addresses so that Defendant can analyze user data, create and analyze the performance of marketing campaigns, and target specific users or specific groups of users for advertisements.  All of this helps Defendant further monetize its Website and maximize revenue by collecting and disclosing user information.

> **3.    *Defendant Discloses User's Data To Audiencerate For The Purpose Of Marketing, Advertising, And Analytics***

82.    Whereas GumGum specifically enables advertisements on websites, Audiencerate is a data platform that "enable[s] data-driven advertising via [its] proprietary technology and platforms" for marketing, advertising, and analysis purposes.[24]

83.    Companies such as Defendant share their users' data with Audiencerate through "daily synchronization" via the Audiencerate Tracker.[25]  Audiencerate claims to anonymize the data and organizes it into segments.[26]  Then, companies use the segmented data to run targeted campaigns

---

[24] AUDIENCERATE, https://www.audiencerate.com/ (last visited Jan. 4, 2024).

[25] AUDIENCERATE, https://www.audiencerate.com/ (last visited Jan. 3, 2024).

[26] *Product Overview*, AUDIENCERATE, https://app.audiencerate.com/doc/home (last visited Jan. 3, 2024).

and perform data analysis through Audiencerate's platform.[27]  *See* Figure 11.

**Figure 11:**



84.     In addition to helping companies make better use of their own customer data, Audiencerate helps companies *sell* their customers' data to further "monetize data."[28]

85.     In order to perform the functions listed above, Audiencerate needs to collect data that identifies a particular user.  This is why Audiencerate collects IP addresses: it allows Audiencerate to segment users in order to run targeted campaigns and perform data analysis.

86.     In other words, companies like Defendant are collecting users' data and sending it to Audiencerate for a profit, whether it is by optimizing marketing campaigns or by purely selling the data.

### III.    PLAINTIFF'S EXPERIENCE

87.     Plaintiff has visited the Website multiple times—including as long ago as February 2023 and as recently as January 2024—on her desktop browser.

88.     When Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the Trackers to be installed on Plaintiff's browser.  Defendant, TripleLift,

---

[27] *Id.*

[28] *Audiencerate partnership sees Sirdata integrated on Adform marketplace for the first time*, SIRDATA (Dec. 10, 2020), https://news.sirdata.com/en/press-release-audiencerate-sirdata-partnership/.

GumGum, and Audiencerate, then used the Trackers to collect Plaintiff's IP address.  *See* Figures 12 (TripleLift Tracker), 13 (GumGum Tracker) and 14 (Audiencerate Tracker).

**Figure 12:**



**Figure 13:**



**Figure 14:**



89.     Because Plaintiff had previously visited the Website but did not clear her cookies at the time the data in Figures 12 and 13 were collected, Plaintiff's IP address was sent to TripleLift and GumGum with the TripleLift and GumGum cookies, as opposed to being sent as standalone data as it would have been on Plaintiff's first visit to the Website.  *See* Figures 3 and 4, *supra*.

90.     Defendant, TripleLift, GumGum, and Audiencerate used the information collected by the Trackers to analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and advertisers' revenue.

91.     Plaintiff did not provide her prior consent to Defendant to install or use the Trackers on her browser.

92.     Defendant did not obtain a court order before installing or using the Trackers.

93.     Plaintiff's privacy, therefore, was invaded by Defendant's violations of CIPA § 638.51(a).

## CLASS ALLEGATIONS

94.     Pursuant to Cal. Code Civ. Proc. § 382, Plaintiff seeks to represent a class defined as all California residents who accessed the Website in California and had their IP address collected by the Trackers (the "Class").

95.     The following people are excluded from the Class: (i) any Judge presiding over this action and members of her or her family; (ii) Defendant, Defendant's subsidiaries, parents,

successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (including current and former employees, officers, or directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

96.     **Numerosity:** The number of people within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

97.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following:

(a)     Whether Defendant violated CIPA § 638.51(a);

(b)     Whether the Trackers are "pen registers" pursuant to Cal. Penal Code §§ 638.50(b);

(c)     Whether Defendant sought or obtained prior consent—express or otherwise—from Plaintiff and the Class;

(d)     Whether Defendant sought or obtained a court order for its use of the Trackers; and

(e)     Whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

98.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class Members, visited the Website and had her IP address collected by the Trackers, which were installed and used by Defendant.

99.    **Adequate Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

100.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 638.51(a)

101.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

102.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

103.    CIPA § 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

104.    A "pen register" is a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    23

electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

105.    The Trackers are "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—the IP address—from the electronic communications transmitted by Plaintiff's and the Class's computers or smartphones. Cal. Penal Code § 638.50(b).

106.    At all relevant times, Defendant installed the Trackers—which are pen registers—on Plaintiff's and Class Members' browsers, and used the Trackers to collect Plaintiff's and Class Members' IP address.

107.    The Trackers do not collect the content of Plaintiff's and the Class's electronic communications with the Website. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1008 (9th Cir. 2014). ("IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication…") (cleaned up).

108.    Plaintiff and Class Members did not provide their prior consent to Defendant's installation or use of the Trackers.

109.    Defendant did not obtain a court order to install or use the Trackers.

110.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 638.51(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 638.51(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For statutory damages of $5,000 for each violation of CIPA § 638.51(a);

(e)     For pre- and post-judgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief; and

(g)     For an order awarding and the Class their reasonable attorney's fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 12, 2024                    Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:_____
                                                    Emily A. Horne

                                            L. Timothy Fisher (State Bar No. 191626)
                                            Emily A. Horne (State Bar No. 347723)
                                            1990 North California Blvd., Suite 940
                                            Walnut Creek, CA 94596
                                            Telephone: (925) 300-4455
                                            Facsimile: (925) 407-2700
                                            E-mail: ltfisher@bursor.com
                                                    ehorne@bursor.com

                                            *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    25

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Emily A. Horne (State Bar No. 347723)<br>Bursor & Fisher, P.A., 1990 N. California Blvd., Ste 940, Walnut Creek, CA 94596<br><br>TELEPHONE NO.: (925) 300-4455      FAX NO. : (925) 407-2700<br>EMAIL ADDRESS: ehorne@bursor.com<br>ATTORNEY FOR *(Name):* Plaintiff Taliah Mirmalek | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>02/13/2024 at 12:00:00 AM<br>By: Milagros Cortez,<br>Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

CASE NAME:
 Taliah Mirmalek v. Los Angeles Times Communications LLC

| CIVIL CASE COVER SHEET<br>[x] **Unlimited** [ ] **Limited**<br>(Amount demanded exceeds $35,000) (Amount demanded is $35,000 or less) | Complex Case Designation<br>[ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>24CV063701<br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* One
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 12, 2024

Emily A. Horne
_____          ►  _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
      Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic
    relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**



Print this form    Save this form    Clear this form

*Unified Rules of the Superior Court of California, County of Alameda*

F. ADDENDUM TO CIVIL CASE COVER SHEET

| Short Title: Taliah Mirmalek v. Los Angeles Times Communications LLC | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

### THIS FORM IS REQUIRED IN ALL NEW <u>UNLIMITED</u> CIVIL CASE FILINGS IN THE
### SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | |
|---|---|
| [x] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447) |
| | [ ] Pleasanton, Gale-Schenone Hall of Justice (448) |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case? [ ] yes [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ x ] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs **[ ] Yes [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

202-19 (5/1/00)

A-13

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
02/13/2024
Chad Finke, Executive Officer / Clerk of the Court
By: _____ M. Cortez _____ Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LOS ANGELES TIMES COMMUNICATIONS LLC,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TALIAH MIRMALEK, individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California,

County of Alameda, 1225 Fallon Street, Oakland, CA 94612

CASE NUMBER:
*(Número del Caso):*
24CV063701

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Emily A. Horne, Bursor & Fisher, P.A., 1990 N. California Blvd., Suite 940, Walnut Creek, CA, Tel. (925) 300-4455

DATE: 02/13/2024    Chad Finke, Executive Officer / Clerk of the Court    Clerk, by _____ , Deputy
*(Fecha)*    *(Secretario)*    M. Cortez    *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Los Angeles Times Communications LLC

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

 Print this form     Save this form     Clear this form

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA**<br><br>COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612<br><br>PLAINTIFF:<br>Taliah Mirmalek<br><br>DEFENDANT:<br>Los Angeles Times Communications LLC | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>02/13/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>M. Cortez |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>24CV063701 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| | |
|---|---|
| Date: 06/17/2024   Time: 8:30 AM   Dept.: 21 | |
| Location: Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

42

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>02/13/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>M. Cortez |
| PLAINTIFF/PETITIONER:<br>Taliah Mirmalek | |
| DEFENDANT/RESPONDENT:<br>Los Angeles Times Communications LLC | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV063701 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Emily A. Horne
Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596

Chad Finke, Executive Officer / Clerk of the Court

Dated: 02/14/2024                By:

M. Cortez, Deputy Clerk

**CERTIFICATE OF MAILING**

| Attorney or Party without Attorney:<br>EMILY A. HORNE (SBN 347723)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>    Telephone No:    925-300-4455 | | **For Court Use Only**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>02/26/2024 at 01:08:47 PM<br>By: Lanette Buffin,<br>Deputy Clerk |
|---|---|---|
|    Attorney For:    Plaintiff | *Ref. No. or File No.:*<br>3133 LA Times Pen Registers | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF ALAMEDA | | |
| *Plaintiff:*    TALIAH MIRMALEK<br>*Defendant:*    LOS ANGELES TIMES COMMUNICATIONS LLC | | |

| **PROOF OF SERVICE SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>24CV063701 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CLASS ACTION COMPLAINT; NOTICE OF CASE MANAGEMENT CONFERENCE

3. *a.    Party served:*    LOS ANGELES TIMES COMMUNICATIONS LLC
   *b.    Person served:*    DIANA RUIZ, CT CORPORATION SYSTEM, REGISTERED AGENT FOR SERVICE OF PROCESS.

4. *Address where the party was served:*    330 NORTH BRAND BOULEVARD, GLENDALE, CA 91203

5. *I served the party:*
   a. **by personal service.**    I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Thu, Feb 22 2024 (2) at *(time)*: 09:02 AM
   (1)    ☒    **(business)**
   (2)    ☐    **(home)**
   (3)    ☐    **(other)** :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a.    ☐    as an individual defendant.
   b.    ☐    as the person sued under the fictitious name of *(specify)*:
   c.    ☐    as occupant.
   d.    ☒    On behalf of *(specify)*:    LOS ANGELES TIMES COMMUNICATIONS LLC
   under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |

   ☒    other:    LLC



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE SUMMONS**

*10473806*
*(6069894)*
**Page 1 of 2**

| *Plaintiff:* TALIAH MIRMALEK | *Case Number:* |
|---|---|
| *Defendant:* LOS ANGELES TIMES COMMUNICATIONS LLC | 24CV063701 |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a.  Name:         Javier Sanchez
   b.  Address:     **FIRST LEGAL**
                  200 WEBSTER STREET, SUITE 201
                  OAKLAND, CA 94607
   c.  Telephone number:   (415) 626-3111
   d.  **The fee** for service was:  266.13
   e.  I am:
       (1)  ☐  not a registered California process server.
       (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
       (3)  ☒  a registered California process server:
          (i)   ☐ owner  ☐ employee  ☒ independent contractor
          (ii)  Registration No:  2014115318, Los Angeles
          (iii)  County:  Los Angeles

8.   *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

02/22/2024
               *(Date)*                                    *Javier Sanchez*



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*10473806*
*(6069894)*
**Page 2 of 2**

45

**FILED**
Superior Court of California
County of Alameda
03/18/2024
Chad Finke, Executive Officer/Clerk of the Court
By: _____ Deputy
N. Hall

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

| , | |
|---|---|
| Plaintiffs | |
| , | |
| Defendants | |
| | |

Case No.

INITIAL CASE MANAGEMENT
ORDER

ASSIGNED FOR ALL PRE-TRIAL
PURPOSES TO:
JUDGE NOËL WISE
DEPARTMENT 21

The following order shall apply to all parties in this action:

<u>CASE MANAGEMENT CONFERENCES</u>

At Case Management Conferences (CMCs), the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750. Counsel attending CMCs must be thoroughly familiar with the case. The Court permits remote CMC appearances by video conference. Parties are to meet and confer in advance of the CMC regarding the form of their appearance. The Court prefers all speaking participants for all parties to participate from the same platform, i.e., all speaking participants should be prepared to attend either by videoconference or in person. (The Court does not have a preference re the manner of attendance of non-speaking participants.)

At the Initial CMC, the parties must be prepared to discuss the nature of the case, both factually and legally, as well as the projected management of the case at each stage, including the prospective use of lead counsel and a common complaint. The CMC is not

1

a perfunctory hearing.  The primary objective of the CMC is to develop a comprehensive plan for a just and efficient determination of the litigation.

Courtesy copies of all CMC statements must be emailed to dept21@alameda.courts.ca.gov and must also be delivered in hard copy directly to Dept. 21 if they exceed five pages.  The filing and delivery date is not later than fifteen (15) days before the CMC unless otherwise directed.

The Parties shall prepare and file a joint CMC statement, prepared in narrative form (not using Form CM-110), after counsel have met and conferred in person or via telephone or videoconference as required by CRC 3.724.  Written or emailed exchanges do not meet the Court's good faith meet and confer requirements.

Initial CMC statements must address the following issues when applicable:

A.  A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B.  The number of parties and their posture, including a proposed structure of representation (e.g., liaison/lead counsel or by committee);

C.  Deadlines and limits on joinder of parties and amended or additional pleadings;

D.  Class discovery and class certification, if applicable;

E.  A proposed schedule for the conduct of the litigation including, but not limited to a discovery plan, a plan for hearing remaining law and motion, proposed

2

mediation dates, projected dates for filing motions for class certification (if applicable), and trial;

F. An identification of all potential evidentiary issues involving confidentiality or protected evidence and/or agreement re a related protective order;

G. A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1) unserved parties and the reasons for the failure to serve;

(2) unserved and/or unfiled cross-complaints;

(3) related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4) any possible jurisdictional or venue issues that may arise;

(5) the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6) unresolved law and motion matters;

(7) requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8) severance or bifurcation of issues for trial; and

(9) calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H. Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, common complaints and/or answers, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and

3

the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

I. If the action is a Judicial Council Coordinated Proceeding (JCCP), the initial CMC statement must also include a list of cases that the parties agree should be coordinated within the JCCP. The list may be supplemented in later CMC statements as additional cases are added to the JCCP through stipulation or otherwise. (CRC 3.544.)

Parties are advised to check the Court's register of actions before appearing at any CMC, including the Initial Case Management Conference, to determine if the Court has issued an order, or a tentative case management order. The Court will endeavor to issue tentative case management orders (TCMOs) at least two days before the CMC. If a TCMO is published, it will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email and through eCourt prior to 3:00 p.m. the court day before the CMC that they wish to appear at the CMC to discuss or contest some aspect of the order. Parties may not contest a TCMO until they have met and conferred in good faith and in person (or via video or telephone conference) concerning the potential areas of dispute or discussion. If subsequent agreement is not reached, the request to appear sent to the Court must, in a non-argumentative manner, succinctly detail the meet and confer efforts, the topics the parties wish to discuss, and the parties' respective positions. (Please note that the

4

49

Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display TCMOs. The TCMOs are found in the Register of Action.) Department 21 may be reached at Dept21@alameda.courts.ca.gov.

## MOTIONS FOR CLASS CERTIFICATION

Plaintiffs are expected to file their motion for class certification no later than 13 months after filing the complaint.  Parties are to include related updates in their initial and supplemental CMC statements.

## NOTICE OF FEE CHANGES - JURY TRIAL FEE

The advance jury fee is fixed at $150.00 and is not refundable.  With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. (C.C.P. § 631(b).)

## DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the Court until after an informal discovery conference pursuant to revised Local Rule 3.31 (amended effective January 1, 2023). A party may request an IDC by joint email to dept21@alameda.courts.ca.gov. Any IDC request must include a succinct, non-argumentative narration of the parties' good faith meet and confer efforts (in person, or via video or telephone conference), and the remaining areas of disagreement. The IDC is not a pro forma step before a motion. Parties are to continue their in person meet and confer efforts after the submission of their IDC statements.  Parties are to email the Court with their request to withdraw the IDC or narrow the issues to be discussed prior to 9:00 a.m. on the date of the IDC.

## EMAILS TO COURT

5

Emails to the Court are not part of the Court record in this case and may be deleted without notice.  Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 21 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the Court's calendar, to give notice that a settlement has been reached, to request that a motion be withdrawn, to request an IDC (and transmit IDC statements), to notify the Court of emergency scheduling issues (i.e. running late to a hearing), to contest a tentative ruling, to reply to an inquiry from the clerk or research attorney of Department 21, to communicate with the courtroom clerk regarding department 21 procedures (that are not otherwise addressed in this order, the local rules, or on the Department or Court web site), to deliver courtesy copies fewer than 5 pages in length (including all attachments), or to communicate re other matters that the Court has expressly authorized in this case**.**

If any email communications to the Court include ex parte communications, attempt to argue issues not properly noticed, or are rude or unprofessional, then the clerk will not pass on the communication to the Court, and it will not be considered.  However, improper communications may be the subject of sanctions ordered sua sponte by the Court, or after consideration of a noticed motion.  The Court may also sua sponte file in the register of action any email communications transmitted to the Court by a party or counsel.

PRO HAC VICE PROCESS

Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order shortening time must be submitted.  Applications will not be considered on an ex parte basis.  (CRC 9.40.)

6

NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 21 will be published in the Court's website in the Register of Action for this case.  The clerk of the Court WILL NOT serve each party a copy of future orders.  Unless otherwise ordered, counsel must obtain copies of all future orders from the Register of Action in this case.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) has a continuing obligation to serve a copy of this order on newly joined parties not listed on the proof of service of this order and file proof of service. Each party defendant joining any third-party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The Court directs the clerk to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED:

_____

NOËL WISE, JUDGE
Noël Wise / Judge

_____

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the

7

mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed: 03/19/2024

*Nicole Hall*

Courtroom Clerk, Dept. 21

N. Hall, Deputy Clerk

8

53

| | Reserved for Clerk's File Stamp |
|---|---|
| # SUPERIOR COURT OF CALIFORNIA<br># COUNTY OF ALAMEDA | **FILED**<br>Superior Court of California<br>County of Alameda<br>03/19/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _Nicole Hall_ Deputy<br>N. Hall |

| COURTHOUSE ADDRESS: |
|---|
| Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 |

| PLAINTIFF/PETITIONER: |
|---|
| Taliah Mirmalek |

| DEFENDANT/RESPONDENT: |
|---|
| Los Angeles Times Communications LLC |

| CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6 | CASE NUMBER:<br>24CV063701 |
|---|---|

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Initial Case Management Conference Order entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Emily A. Horne
Bursor & Fisher, P.A.
ehorne@bursor.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 03/19/2024                    By:

_Nicole Hall_

N. Hall, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

Rene C. Davidson Courthouse, Department 21

## JUDICIAL OFFICER: HONORABLE NOËL WISE

Courtroom Clerk: Nicole Hall                                    CSR: None

---

**24CV063701**                                                    March 18, 2024
                                                                    3:30 PM

**MIRMALEK**
  **vs**
**LOS ANGELES TIMES COMMUNICATIONS LLC**

---

**MINUTES**

**APPEARANCES:**

**NATURE OF PROCEEDINGS: Complex Determination Hearing filed by Taliah Mirmalek (Plaintiff) on 02/13/2024**

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court,

55

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

Order has been filed.

The Initial Case Management Conference scheduled for 06/17/2024 is continued to 03/24/2025 at 01:30 PM in Department 21 at Rene C. Davidson Courthouse .

**Plaintiff must file a motion for class certification prior to the March 24, 2025 hearing.**

**The parties shall, no later than 15 calendar days before the next case management hearing, file a joint case management statement on pleading paper.**

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

By:        N. Hall, Deputy Clerk
                              Minutes of: 03/18/2024
                              Entered on: 03/19/2024

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

| | |
|---|---|
| Taliah Mirmalek<br>　　　　　Plaintiff/Petitioner(s)<br>vs.<br>Los Angeles Times<br>Communications LLC<br>　　　　　Defendant/Respondent<br>(s) | No.　　24CV063701<br><br>Date:　03/18/2024<br>Time:　3:30 PM<br>Dept:　21<br>Judge:　Noël Wise<br><br>ORDER re: Complex Determination<br>Hearing filed by Taliah<br>Mirmalek (Plaintiff) on<br>02/13/2024 |

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

Order has been filed.

The Initial Case Management Conference scheduled for 06/17/2024 is continued to 03/24/2025 at 01:30 PM in Department 21 at Rene C. Davidson Courthouse .

**Plaintiff must file a motion for class certification prior to the March 24, 2025 hearing.**

**The parties shall, no later than 15 calendar days before the next case management hearing, file a joint case management statement on pleading paper.**

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

Dated :   03/18/2024

Noël Wise / Judge

---

ORDER re: Complex Determination Hearing filed by Taliah Mirmalek (Plaintiff) on 02/13/2024

Page 2 of 3

58

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

ORDER re: Complex Determination Hearing filed by Taliah Mirmalek (Plaintiff) on 02/13/2024

Page 3 of 3

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>03/19/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _Nicole Hall_ Deputy<br>N. Hall |
| PLAINTIFF/PETITIONER:<br>Taliah Mirmalek | |
| DEFENDANT/RESPONDENT:<br>Los Angeles Times Communications LLC | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV063701 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Complex Determination Hearing filed by Taliah Mirmalek (Plaintiff) on 02/13/2024 entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Emily A. Horne
Bursor & Fisher, P.A.
ehorne@bursor.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 03/19/2024                    By:

_Nicole Hall_

N. Hall, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE**
**CODE OF CIVIL PROCEDURE 1010.6**