IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALIAH MIRMALEK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>Defendant. | Case No. 3:24-cv-01797-CRB<br><br>**ORDER DENYING MOTION TO REMAND WITHOUT PREJUDICE** |

Taliah Mirmalek, individually and on behalf of all others similarly situated ("Plaintiff"), has brought this putative class action against Los Angeles Times Communications LLC ("Defendant"), owner and operator of the website LATimes.com (the "Website"), alleging that Defendant caused three third-party trackers to install and use "pen register" devices to collect the IP addresses of Website visitors in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a). Defendant removed to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1446, 1453, 1711–15. Plaintiff now moves to remand the matter to the Superior Court of the State of California, County of Alameda, pursuant to 28 U.S.C. §§ 1332(d)(3), 1332(d)(4)(B), and 1447(c). The Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and therefore VACATES the hearing currently on calendar for May 31, 2024. As explained below, the Court denies the motion.

## I. BACKGROUND

### A. Factual Allegations

#### 1. The Parties

Plaintiff is a citizen of California and was present in California when she accessed the Website. Compl. (dkt. 1) ¶ 6. Plaintiff seeks to represent a class defined as "all California residents who accessed the Website in California and had their IP address collected by the Trackers." Id. ¶ 94. Defendant is a Delaware Limited Liability Company with its principal place of business in California. Id. ¶ 7.

#### 2. The Dispute Between the Parties

Plaintiff alleges that when users visit the Website, Defendant causes three trackers—the TripleLift Tracker, GumGum Tracker, and Audiencerate Tracker (collectively, the "Trackers")—to be installed on Website visitors' internet browsers. Id. ¶¶ 28, 38, 49. Plaintiff alleges that Defendant then uses these Trackers to collect Website visitors' IP addresses without the users' consent or a court order. Id. ¶¶ 64, 66.

In relevant part, CIPA § 638.51(a) prohibits any "person" from "install[ing] or us[ing] a pen register or trap and trace device without first obtaining a court order," or obtaining the consent of the user. Cal. Penal Code §§ 638.51(a), (b)(5). A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiff alleges that because the Trackers capture Website visitors' "routing, addressing, or signaling information," the Trackers each constitute a "pen register" under Section 638.50(b) of CIPA. Compl. ¶ 24.

### B. Procedural History

Plaintiff filed this putative class action on February 13, 2024, in the Superior Court of the State of California for the County of Alameda. Id. at 1. On March 22, 2024, Defendant removed this action, asserting that federal subject matter jurisdiction exists pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332(d), 1446, and

2

1453.  Notice of Removal (dkt. 1) at 1.  Plaintiff now seeks to remand the case on the ground that this action falls within the "mandatory home state exception" to CAFA, found in 28 U.S.C. § 1332(d)(4)(B), or, in the alternative, under the "discretionary home state exception," found in 28 U.S.C. § 1332(d)(3).  Mot. to Remand (dkt. 11) at 1–2.

## II. LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction."  28 U.S.C. § 1441(a).  District courts have federal question jurisdiction over civil actions that "aris[e] under the Constitution, laws, or treaties of the United States."  Id. § 1331.  A case can "aris[e] under" federal law in two ways.  First, "a case arises under federal law when federal law creates the cause of action asserted."  Gunn v. Minton, 568 U.S. 251, 257 (2013).  Second, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Id. at 258 (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313–14 (2005)).

Federal district courts have supplemental jurisdiction over related claims, 28 U.S.C. § 1367(a), so a defendant may remove where there is federal jurisdiction over a single claim.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 562–63 (2005).  Where "the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. 1446(b)(3).

There is a "strong presumption" against removal jurisdiction, and courts "strictly construe the removal statute against removal."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  This "means that the defendant always has the burden of establishing that removal is proper."  Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted).  Any doubt regarding the legitimacy of the removal favors remanding the case to state court.  Id.

## III. DISCUSSION

This order addresses: (A) CAFA jurisdiction generally; (B) Plaintiff's argument that the Court must remand this matter under CAFA's "mandatory home state exception"; (C) Plaintiff's alternative argument that the Court should exercise its discretion to remand under CAFA's "discretionary home state exception"; and (D) the issues of jurisdictional discovery and leave to amend.

### A. CAFA Jurisdiction

CAFA provides that federal district courts shall have original jurisdiction over civil class actions where the matter in controversy exceeds five million dollars and "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2). "Congress enacted CAFA in 2005 to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multistate or even national class actions in state courts.'" Corber v. Xanodyne Pharm., Inc., 771 F.3d 1218, 1222 (9th Cir. 2014) (en banc) (quoting Tanoh v. Dow Chem. Co., 561 F.3d 945, 952 (9th Cir. 2009)). Thus, "CAFA was intended to strongly favor federal jurisdiction over interstate class actions." King v. Great Am. Chicken Corp, Inc., 903 F.3d 875, 878 (9th Cir. 2018).

"Congress provided exceptions to CAFA jurisdiction, however, to allow truly intrastate class actions to be heard in state court." Adams v. W. Marine Prod., Inc., 958 F.3d 1216, 1220 (9th Cir. 2020) (alteration in original). The two exceptions that are relevant here are (1) the "mandatory home state exception" and (2) the "discretionary home state exception."

#### 1. The "Mandatory Home State Exception"

The "mandatory home state exception" to CAFA provides, in relevant part, that a district court must decline to exercise jurisdiction over a class action in which "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A).

4

### 2. The "Discretionary Home State Exception"

CAFA's "discretionary home state exception" provides that "a district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. 1332(d)(3). CAFA outlines six factors for a district court to consider in deciding whether to decline jurisdiction under this discretionary home state exception. 28 U.S.C. § 1332(d)(3)(A)–(F).

### B. Plaintiff has not shown that greater than two-thirds of the proposed class are citizens of California.

There appears to be no dispute here that at least one defendant is a defendant (i) from whom significant relief is sought by members of the plaintiff class, (ii) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class, and (iii) who is a citizen of the State in which the action was originally filed. See 28 U.S.C. § 1332(d)(4)(A). Nor is there any dispute that the alleged principal injuries resulting from the alleged conduct were incurred in the State in which the action was originally filed, and that during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons. See id. Thus, the Court's analysis as to the mandatory home state exception will center on whether Plaintiff has demonstrated that two-thirds of the members of the putative class are California citizens.

To qualify for the mandatory home state exception, Plaintiff bears the burden of proving that greater than two-thirds of putative class members are California citizens. 28 U.S.C. § 1332(d)(4)(A)(i)(I); see Adams, 958 F.3d at 1221. "To meet this burden, the moving party must provide 'some facts from which the district court may make findings regarding class members' citizenship.'" Brinkley v. Monterey Fin. Servs., Inc., 873 F.3d 1118, 1121 (9th Cir. 2017) (quoting Mondragon v. Capital One Auto Fin., 736 F.3d 880, 884 (9th Cir. 2013)). "To be a citizen of a state, a natural person must first be a citizen of

the United States." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." Id. A district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard. Mondragon, 736 F.3d at 884. Although such a finding must be based on more than "guesswork," the Ninth Circuit has cautioned that the burden of proof on a plaintiff "should not be exceptionally difficult to bear." Id. at 884, 886. Even under this lenient standard, Plaintiff did not meet her burden here.

The first stumbling block for Plaintiff is that the size of the class is unknown. "In order to determine whether two-thirds of class members are California citizens, we must first determine the size of the class as a whole." Brinkley, 873 F.3d at 1121. Determining the denominator of the class size is crucial to calculating the fraction of California citizens contained in the class.

Here, Plaintiff's class consists of "all California residents who accessed the Website in California and had their IP addresses collected by the Trackers." Compl. ¶ 94. Plaintiff acknowledges that the number of people in this class could "amount to thousands, if not millions of persons." Id. ¶ 96. But Plaintiff offers no evidence to ground the class size in anything more specific than "thousands, if not millions." Id. This compares unfavorably even to Brinkley, a case in which the Ninth Circuit vacated a motion to remand because the putative class size was undefined. See Brinkley, 873 F.3d at 1118, 1122. In that case, the plaintiff presented evidence of residency for at least a portion of the class, but failed to produce evidence with regard to a class subgroup. Id. at 1122. Despite the partial evidence, the court vacated the motion to remand because the lack of residency evidence for the subgroup rendered the class indefinite. Id. In this case, there is not even partial evidence on the total class size. "Absent 'some facts in evidence' regarding the size of the entire class, the district court cannot determine whether two-thirds of all class members are California citizens." Id. (quoting Mondragon, 736 F.3d at 884). Thus, on this score alone,

6

Plaintiff "has not met her burden to show that the home-state controversy exception applies." Id.

Next, the slim evidence that Plaintiff does offer is not sufficient to establish that two-thirds of the putative class are California citizens. To prove citizenship, Plaintiff points to evidence that "as of February 2023, 26.7 million of the 39 million people living in California were eligible to vote." Mot. to Remand at 4. Plaintiff surmises further, curiously based on a definition from the California Franchise Tax Board unrelated to voting, that those 26.7 million people are "citizens for the purposes of jurisdiction" because "people who reside in California for reasons that are not temporary have the intention to remain in California" and are domiciled in the state. Id. Therefore, Plaintiff urges, "at a minimum, 68% of California's residents are citizens for the purposes of jurisdiction," and thus, "it is likely that at least 68% of the proposed Class is composed of California citizens, exceeding the two-thirds requirement." Id. at 4–5. To bolster this claim, Plaintiff argues that Defendant's newspaper primarily serves a California audience, and thus it is likely that at least two-thirds of the California residents who accessed the Website are California citizens. Id. at 5.

But Plaintiff's conclusion does not follow from the evidence. Even setting aside the issues presented by Plaintiff's use of a Franchise Tax Board definition to prove voter eligibility[1] and the fact that California does not limit voter eligibility to state citizens,[2] Plaintiff has only attempted to prove that "68% of California's residents are citizens for the purposes of jurisdiction." Mot. to Remand at 4. This says nothing about how many in that group are putative class members. Plaintiff seeks to represent a class defined as "all California residents who accessed the Website in California and had their IP address collected by the Trackers." Compl. at ¶ 94. As Defendant argues, "[e]ven if 68% of

---

[1] See Residents, STATE OF CALIFORNIA FRANCHISE TAX BOARD, https://www.ftb.ca.gov/file/personal/residency-status/index.html (defining "resident" for the purposes of tax-filing only, not "for purposes of taxing and voting" as Plaintiff urges). Mot. to Remand at 4.
[2] Cal Const, Art. II § 2 ("A United States citizen 18 years of age and resident in this state may vote.") (emphasis added).

7

California's residents are citizens, that does not mean the same 68% of California residents accessed the LA Times Website in California and had their IP address collected by the Trackers within the past year." Opp'n to Mot. to Remand (dkt. 13) at 7.

It may well be that two-thirds of putative class members are California citizens. But it may be less. The Court simply does not have sufficient evidence to conclude by a preponderance of the evidence that greater than two-thirds of the putative class are California citizens. "A jurisdictional finding of fact should be based on more than guesswork." Mondragon, 736 F.3d at 884. The evidence offered by Plaintiff here amounts to mere guesswork. While it is "[s]ensible guesswork," given that Defendant is a California-focused newspaper and surely many California residents are citizens for jurisdictional purposes, it is "guesswork nonetheless." See id. The Court cannot find that greater than two-thirds of the class are California citizens based only on this one piece of evidence. And while the Court need not use a "precise mathematical formula or exact data" in making class citizenship determinations, see Reply in Supp't of Mot. to Remand (dkt. 14) 3, more is needed than what Plaintiff has presented here.

The Ninth Circuit has vacated motions to remand based on far more tailored evidence. For example, in King v. Great American Chicken Corp, Inc., the district court granted remand based on a stipulation that "at least 67% of the last-known addresses [of class members] are in California." 903 F.3d at 877. The Ninth Circuit vacated the motion to remand because the stipulation failed to account for the likelihood that "at least some . . . in the group [had] moved out of California" at the time of removal, that "at least a few [class members] were citizens of other states even if they temporarily had a residential address in California, such as an out-of-state student working while attending college in California," or that at least "some putative class members were not United States citizens." Id. at 879.

"The problem" with the King stipulation, as with Plaintiff's voter eligibility estimation in this case, "is that this impression rest[ed] on guesswork." Id. at 880. Here, as in King, "[t]here [is] no evidence to support a factual finding that the proportion of

California citizens was greater than two-thirds." Id. What is more, the evidence offered here is unrelated to the putative class. As explored above, the percentage of Californians who are eligible to vote tells the Court nothing about which of those Californians (a) are citizens, (b) accessed the Website, and (c) were in California at the time they were tracked. As in King, even if the Court were to accept Plaintiff's voter eligibility estimation, the 68% citizen figure "[leaves] very little cushion, if any, to account for" real differences in the percentage of California residents who are eligible to vote and the percentage of Website users whose IP addresses were tracked who are also California citizens. See id. at 876. It could be that once populations such as out-of-state students, military personnel, and non-U.S. citizens are factored in, the percentage of putative class members who are citizens could slip below two-thirds. Thus, Plaintiff's estimation, viewed even in the most favorable light, narrowly clears the two-thirds requirement; this was another factor that led the Ninth Circuit to reject the stipulation in King. Id.

Nor is Plaintiff's proffered evidence comparable to the evidence that the court found sufficient to carry the plaintiff's burden in Adams v. West Marine Products, Inc. In that case, in order to qualify for the discretionary home state exception to CAFA (requiring greater than one-third but less than two-thirds of the members of the class be citizens), the plaintiff offered evidence of (a) a fixed class size from which the fraction of California citizens could be determined, and (b) a detailed list of contact information that included last known addresses for over 90% of the class. Adams, 958 F.3d at 1219. While the Ninth Circuit acknowledged that last known addresses are an imperfect proxy for citizenship, "given the substantial cushion afforded by the percentage of class members with last known California addresses, as compared to the percentage of class member citizens required for a discretionary remand, [the plaintiff] readily met her burden." Id. at 1223. In comparison, the evidence here is speculative. Plaintiff has failed to meet her burden to show that greater than two-thirds of the putative class are California citizens.

### C. Plaintiff has also not shown that greater than one-third of the proposed class are California citizens.

The above analysis applies to the discretionary home state exception as well. The indeterminate class size remains an issue. See Brinkley, 873 F.3d at 1121 ("In order to determine whether two-thirds of class members are California citizens, we must first determine the size of the class as a whole."). There is also a lack of evidence from which the Court can conclude that at least one-third of the putative class are California citizens. The evidence presented here is far weaker than the last known addresses that were sufficient in Adams. See Adams, 958 F.3d at 1223 (holding that the plaintiff met their burden where "more than 90% of class members had last known mailing addresses in California—a percentage far greater than the one-third (or roughly, 33%) required for remand."). Because Plaintiff has failed to meet her burden, the Court need not apply the discretionary factors for remand found in 28 U.S.C. § 1332(d)(3)(A)–(F).

### D. Jurisdictional Discovery and Leave to Amend

Finally, Plaintiff asks that if the Court holds that Plaintiff has not satisfied her burden at this point, then the Court should permit Plaintiff to take jurisdictional discovery and renew her motion to remand. Mot. to Remand at 8. The Ninth Circuit has repeatedly adopted this approach in similar cases. See, e.g., Mondragon, 736 F.3d at 886 (vacating the district court's order to remand "with instructions to allow Mondragon an opportunity, if he so chooses, to renew his motion to remand and to gather evidence to prove that more than two-thirds of putative class members are citizens of California"); King, 903 F.3d at 881 (holding that "[o]n remand to the district court . . . King should be given an opportunity to seek additional jurisdictional discovery and to renew her motion to remand").

Here, Plaintiff has not proven the requisite citizenship status of the putative class. But jurisdictional discovery may fill this gap. Defendant might have records of Website users who might have been tracked while visiting the Website—that would shed light on the total size of the putative class and their citizenship at the time of removal.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's motion to remand WITHOUT PREJUDICE to Plaintiff renewing the motion based on facts uncovered during discovery.  The Court further ORDERS that Plaintiff may conduct limited jurisdictional discovery regarding the size and citizenship of the putative class only.

**IT IS SO ORDERED.**

Dated: May 23, 2024



CHARLES R. BREYER
United States District Judge

11