1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          klynn@bursor.com
          jwilner@bursor.com

**BURSOR & FISHER, P.A**.
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALIAH MIRMALEK, on behalf of herself and all others similarly situated,<br><br>                             Plaintiff,<br><br>     v.<br><br>LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>                         Defendant. | Case No. 3:24-cv-01797-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  December 19, 2025<br>Time: 10:00 a.m.<br>Ctrm: Via Zoom<br>Judge: Hon. Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 19, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102 in the courtroom of Hon. Charles R. Breyer (via Zoom), Plaintiff Taliah Mirmalek ("Plaintiff"), by and through her undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiff as Class Representative, and appoint Bursor & Fisher, P.A. as Class Counsel, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time and place for a final approval hearing and a schedule leading up to the final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met. This motion is based on Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, the accompanying Declaration of Max S. Roberts and attachments thereto, including the Settlement Agreement, the Declaration of Carla Peak of Kroll Administration, LLC, and any other written and oral arguments that may be presented to the Court.

Dated: October 15, 2025

Respectfully submitted,

By: */s/ Max S. Roberts*
　　　Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         klynn@bursor.com
         jwilner@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................2

SUMMARY OF THE PROPOSED SETTLEMENT .......................................2

I.     CLASS DEFINITION .................................................................................2

II.    MONETARY RELIEF ...............................................................................3

III.   RELEASE....................................................................................................5

IV.   SERVICE AWARDS .................................................................................5

V.    ATTORNEYS' FEES AND EXPENSES ..................................................6

VI.   PAYMENT OF NOTICE AND ADMINISTRATIVE FEES..................6

ARGUMENT ........................................................................................................7

I.     THE SETTLEMENT CLASS SATISFIES FED R. CIV. P. 23(A) AND 23(B)(3) .............7

     A.    Rule 23(a)(1) – Numerosity .........................................................7

     B.    Rule 23(a)(2) – Commonality ......................................................7

     C.    Rule 23(a)(3) – Typicality ............................................................7

     D.    Rule 23(a)(4) – Adequacy ............................................................8

     E.    Rule 23(b)(3) – Predominance And Superiority .........................8

II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE...........9

     A.    Fed. R. Civ. P. 23(e)(2)(A) – Plaintiff And Her Counsel Have Adequately Represented The Class ...................................9

     B.    Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was Negotiated At Arm's Length ......................................................9

     C.    Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate .............................................................10

          1.    The Costs, Risks, And Delay Of Trial And Appeal ....................................10

          2.    The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class ...........................................12

          3.    The Terms Of Any Proposed Award Of Attorney's Fees ............................12

          4.    Any Agreement Required To Be Identified ................................................13

D.    Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally ........................................................................ 13

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ............................ 13

IV.    THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FINAL APPROVAL HEARING ........................................................................................ 14

CONCLUSION ..................................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**CASES**

4

*Abat v. Chase Bank USA, N.A.*,
2011 WL 13130637 (C.D. Cal. July 11, 2011) ................................................................ 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................ 13

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................... 5

*Campbell v. Facebook Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016) ...................................................................................... 3

*Ching v. Siemens Indus., Inc.*,
2014 WL 2926210 (N.D. Cal. June 27, 2014).................................................................. 11

*Collins v. Cargill Meat Sols. Corp.*,
274 F.R.D. 294 (E.D. Cal. 2011) ...................................................................................... 14

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) .................................................................... 10

*G. F. v. Contra Costa County*,
2015 WL 4606078 (N.D. Cal. July 30, 2015) .................................................................... 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .............................................................................. 1

*Greer v. Dick's Sporting Goods, Inc.*,
2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ................................................................... 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).......................................................................................... 8, 9

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)................................................................................................ 13

*Hazel v. Prudential Financial, Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023).................................................................... 10

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................. 13

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ............................................................................................. 5

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .................................................. 9, 10, 12

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ......................................................... 7

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ................................................................... 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods.* Liab. Litig.,
  746 F. App'x 655 (9th Cir. 2018) ......................................................................... 13

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................................ 7

*Katz-Lacabe v. Oracle Am., Inc.*,
  2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ............................................... 6, 10, 12

*Kramer v. XPO Logistics, Inc.*,
  2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) .......................................................... 9

*Licea v. Hickory Farms LLC*,
  2024 WL 1698147 (Los Angeles Cnty. Super. Ct. Mar. 13, 2024) .......................... 1

*Montera v. Premier Nutrition Corp.*,
  2025 WL 751542 (N.D. Cal. Mar. 10, 2025) ......................................................... 1

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 11

*Norton v. LVNV Funding, LLC*,
  2021 WL 3129568 (N.D. Cal. July 23, 2021) ....................................................... 12

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................................... 8

*Steiner v. Am. Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. 2007) .................................................................... 12

*Stone v. Howard Johnson Int'l, Inc.*,
  2015 WL 13648551 (C.D. Cal. June 15, 2015) .................................................... 14

*Torres v. Prudential Financial, Inc.*,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ................................................... 8, 11

*Torres v. Prudential Financial, Inc.*,
  2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .................................................... 1, 11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................................ 12

*Wakefield v. ViSalus, Inc.*,
   51 F.4th 1109 (9th Cir. 2022) ................................................................................. 3

*Wal–Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................. 7

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................................... 9

*Zaklit v. Nationstar Mortg. LLC*,
   2017 WL 3174901 (C.D. Cal. July 24, 2017) ........................................................ 9

**STATUTES**

28 U.S.C. § 1715(b) .................................................................................................. 14

Cal. Pen. Code § 637.2(a)(1) .................................................................................... 3

Cal. Pen. Code § 638.50(b) ................................................................................... 1, 7

§ 638.51 .................................................................................................................... 11

§§ 638.50-638.51 ...................................................................................................... 10

**RULES**

Fed. R. Civ. P. 23 ..................................................................................................... 14

Fed. R. Civ. P. 23(a) .............................................................................................. 7, 8

Fed. R. Civ. P. 23(b) .............................................................................................. 7, 8

Fed. R. Civ. P. 23(c) ................................................................................................. 13

Fed. R. Civ. P. 23(e) .............................................................................. 9, 10, 12, 13

**OTHER AUTHORITIES**

Senate Bill 690 ......................................................................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In February 2024, Plaintiff and her counsel brought a relatively novel theory of liability: that Defendant's alleged installation and use of third-party Trackers[1] that collected IP addresses and other identifiers from users to Defendant's Website constituted a "pen register" under Cal. Pen. Code § 638.50(b). At that time, only one court had sustained something analogous to this theory. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). By contrast, several state courts had rejected the theory by the time any motion to dismiss was brought. *See*, *e.g.*, *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Los Angeles Cnty. Super. Ct. Mar. 13, 2024). Against these odds, Plaintiff and her counsel were able to move the case into discovery when the Court denied Defendant's motion to dismiss. And, notwithstanding legislative efforts to amend the statute under which Plaintiff brought suit, Plaintiff and her counsel negotiated a highly favorable settlement that puts significant relief in the hands of California consumers.

Specifically, the Settlement—reached with the assistance of a neutral mediator, Ambassador Jeff Bleich (Ret.)—creates a $3.85 million non-reversionary fund from which any of the hundreds of thousands of Settlement Class Members can make a claim for a *pro rata* share. The Settlement obviates the need for expensive, protracted litigation in this novel arena, where claims that are certified as a class may ultimately be tossed at summary judgment or had damages significantly reduced. *See generally Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) (Breyer, J.) (granting summary judgment against plaintiffs in CIPA § 631 claim after class certification); *Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025) (awarding only partial statutory damages).

Thus, the Settlement falls within the range of possible approval and warrants preliminary approval. Accordingly, Plaintiff respectfully requests that the Court enter an order in the form of the attached Proposed Preliminary Approval Order that (i) grants preliminary approval of the Settlement; (ii) conditionally certifies the Settlement Class; (iii) designates Plaintiff as the Class Representative

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the settlement agreement. *See* Exhibit 1 to the Declaration of Max S. Roberts ("Roberts Decl.").

and appoints Bursor & Fisher, P.A. as Class Counsel; (iv) appoints Kroll Settlement Administration LLC as the Settlement Administrator and establishes procedures for giving notice to members of the Settlement Class; and (v) sets a date, time and place for a final approval hearing, and further proceedings leading up to that hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this matter are discussed in detail in the Roberts Declaration. *See* Roberts Decl. ¶¶ 4-12.

## SUMMARY OF THE PROPOSED SETTLEMENT

### I.    CLASS DEFINITION

The Settlement Class consists of "all persons who accessed LA Times online via website or mobile app in California and had their information collected by tracking technologies between January 31, 2023 through to the date of preliminary approval of this Settlement Agreement." Settlement ¶ 1.28.   Pursuant to District Guideline 1(a), the Settlement Class differs from the Complaint in that it includes users of the mobile application in addition to the website.  This is so because Defendant incorporates the same technology on its mobile application as well.  Further, the Settlement Class begins on January 31, 2023 rather than February 12, 2023 because it was easier for Defendant to compile a class list (of subscribers) with the full month included.  Roberts Decl. ¶ 14.

The Parties cannot obtain the precise number of Settlement Class Members without extensive and costly third-party discovery, tantamount to Plaintiff proving her case on the merits. Roberts Decl. ¶ 15. Defendant has advised that it has approximately 335,000 California-based subscribers, although the Settlement Class also includes non-subscribers that accessed its website and mobile application during the class period, and Defendant itself does not have any means of identifying these non-subscribers.  Roberts Decl. ¶ 7.  Defendant has also advised that there were approximately 9 million unique IP addresses associated with devices located in California that accessed LA times online during the class period.  *Id*.  While the number of IP addresses is greater than the number of corresponding class members because people can access the website from multiple different IP addresses, the Washington Post has reported that "the United States [has] five available IP addresses

per person."[2]  *See also* Roberts Decl. ¶ 15.  Therefore, if the number of IP addresses is divided by five, that would equal 1,800,000 Settlement Class Members.  *Id.*  However, Plaintiff cannot attest to the accuracy of this estimate.  *Id.*

## II.    MONETARY RELIEF

Defendant has agreed to establish common fund of $3,850,000 to cover all claims filed by Settlement Class Members, as well as the costs of settlement administration, services awards, and attorneys' fees, costs, and expenses that the Court may approve.  Settlement ¶¶ 1.30, 2.1.  Settlement Class Members can receive a *pro rata* cash payment which will be determined by the number of claims filed.  *Id.* ¶ 2.1(b).  No money will revert to Defendant.  *Id.* ¶ 1.30.  "To the extent that any checks issued to a Settlement Class Member are not cashed within one hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a *pro rata* basis."  *Id.* ¶ 2.1(d).  "To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall revert to and the Consortium of Cybersecurity Clinics [as *cy pres*], subject to approval by the Court."  *Id.*

Pursuant to District Guideline 1(c), had Plaintiff prevailed at trial, Cal. Pen. Code § 637.2(a)(1) provides for statutory damages of $5,000 for each violation.  However, even assuming the Settlement Class was only Defendant's 335,000 subscribers, Defendant's liability would be $1.675 billion.  Such an award may have been found to be excessive under Ninth Circuit precedent. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of $925 million in statutory damages).

Given this, the better comparison is Plaintiff's actual damages.  *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 269 (N.D. Cal. 2016) (declining to certify CIPA damages class because "many class members appear to have suffered little, if any, harm, such that a statutory damages award would be a disproportionate penalty.").  Plaintiff's theory is one of unjust enrichment: that by installing and using the Trackers, Defendant was able to identify Settlement Class Members, and therefore, sell

---

[2] Available at https://www.washingtonpost.com/graphics/business/world-ip-addresses/.

their information to advertisers for more money than it otherwise would have been able to without installing and using the Trackers. Roberts Decl. ¶ 16. To that end, Plaintiff would have argued her actual damages would have been the difference between what her information was sold for with the Trackers, and what it would have been sold for without them. *Id.* For example, Plaintiff would have alleged Website traffic from her browser shows that (i) Plaintiff's IP address was recorded by the Audiencerate Tracker, (ii) the Audiencerate Tracker synced with several data brokers, including but not limited to PubMatic, Experian, and Epsilon, to allegedly identify Plaintiff, (iii) PubMatic, upon learning all of this information about Plaintiff, synced with the TripleLift Tracker, and (iv) using the TripleLift Tracker, Plaintiff would have argued her information was offered for sale to Norwegian Cruise Line, who was willing to pay approximately $0.20 Cost Per Mille ("CPM") to fill a banner advertising space on Defendant's Website. *Id.* ¶¶ 17-22.[3] So, Plaintiff would have argued her information was sold for $0.20 CPM with the Trackers, meaning Plaintiff's actual damages would likely be a few cents on the dollar. *Id.* ¶ 23. By comparison, the Settlement provides a recovery of between $2.14 and $11.49 per Settlement Class Member based on the above estimates. *Id.*

Pursuant to District Guideline 11, Plaintiff includes a chart of comparable data privacy class settlements. The proposed Settlement is in line with these other settlements:

| Case | Settlement Amount | Class Size | Recovery Per Class Member | Final Payout Per Class Member[4] | Statutory Privacy Claim(s) |
|------|-------------------|------------|---------------------------|----------------------------------|----------------------------|
| *Mirmalek v. Los Angeles Times Commc'ns, LLC*, No. 3:24-cv-1797 (N.D. Cal.) | $3,850,000 | ~335,000-~1,800,000 | $2.14-$11.49 | $40.32-$216.63 | CIPA § 638.51 |
| *Koskosky v. DaVita Inc.*, No. CACE24009252 (Fla. Cir. Ct. Broward Cnty.) | $3,800,000 | 605,436 | $6.27 | $37.61 | CIPA § 631, CMIA, FSCA |

---

[3] The operative Complaint in *Fregosa v. Mashable Inc.*, Case No. 3:25-cv-1094, ECF No. 30 (N.D. Cal. May 5, 2025), which is also pending before this Court and was also filed by Proposed Class Counsel, describes this process in greater detail, as it represents a more fulsome understanding of the technology at issue in this litigation and others. Roberts Decl. ¶ 10; *see also* Roberts Decl. Ex. 2 at ¶¶ 126-164, 206-210.

[4] Kroll expects the claims rate to be between 1% to 6%. Peak Decl. ¶ 34. Therefore, Plaintiff has used the median claims rate (3.5%) for this estimate.

| Case | Settlement Amount | Class Size | Recovery Per Class Member | Final Payout Per Class Member[4] | Statutory Privacy Claim(s) |
|---|---|---|---|---|---|
| *In re Workit Health, Inc.*, No. 2:23-cv-11691 (E.D. Mich.) | $578,680 | 125,800 | $4.10 | $43.00 | CIPA § 631, ECPA, CMIA |
| *Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-cv-4792 (N.D. Cal.) | $115 million | 220 million | $0.52 | $25.00 | CIPA § 631, FSCA |
| *Kane v. University of Rochester*, No. 6:23-cv-6027 (W.D.N.Y.) | $2,850,000 | 653,001 | $4.36 | $33.81 | ECPA, SCA |

### III.    RELEASE

In exchange for the relief described above, Defendant and each of the "Released Parties," as defined in Settlement ¶ 1.24, will be released from claims involving the alleged disclosure, use, interception, or transfer of Settlement Class Members' information, such as the direct collection of that information from the website or mobile app, or the use of that information by Third Parties for subsequent profiling and advertising.  *See* Settlement ¶¶ 1.23, 3.1-3.2.  Pursuant District Guideline 1(b), the release is consistent with Plaintiff's claims, which involve the collection and use of their information by third parties (as caused by Defendant's actions).  Plaintiff does not only allege that the Third Parties collected her information, but that her information was used to profile and advertise to her.  *See* Compl. ¶¶ 70-72, 75-77, 83-84.  Thus, the Settlement reasonably releases Defendant from claims related to both the Third Parties' direct collection of Settlement Class Members' information from Defendant's website or app, and from claims stemming from the subsequent sale or use of that data now that the data has been released into the ether.  *See*, *e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a … released claim [that] is based on the identical factual predicate as that underlying the claims in the settled class action.'") (cleaned up).  Pursuant to District Guideline 1(d), Plaintiff is not aware of any other case affected by the Settlement.

### IV.    SERVICE AWARDS

Subject to the Court's approval, Plaintiff will apply for a service award in the amount of $5,000, payable from the Settlement Fund.  Settlement ¶ 8.3.  This is a "presumptively reasonable" service award.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).  Plaintiff

has spent substantial time on this action, assisted with the drafting of the Complaint, provided information from her device and website traffic to assist with counsel's investigation, has been in contact with counsel frequently and has stayed informed of the status of the action, including settlement, and was willing to sit for a deposition and testify at trial if necessary. *See* Roberts Decl. ¶ 44. Settlement Class Members will be notified of Plaintiff's intent to seek a service award. *See* Settlement Ex. B.

## V.    ATTORNEYS' FEES AND EXPENSES

Proposed Class Counsel will apply to the Court for an award of attorneys' fees of 25% (or $962,500) of the Settlement Fund. Settlement ¶ 8.1. This is "in line with the range of awards in this Circuit." *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *4 (N.D. Cal. Nov. 15, 2024). In addition, Proposed Class Counsel will also apply for $26,797 in reasonable litigation costs and expenses that were necessary for the prosecution of this Action, as well as any future costs related to the approval and administration of the Settlement. Roberts Decl. ¶¶ 35-36.

## VI.    PAYMENT OF NOTICE AND ADMINISTRATIVE FEES

The Parties propose that Kroll Settlement Administration LLC ("Kroll") act as the Settlement Administrator. Settlement ¶ 1.27. Pursuant to District Guidelines 2(a) and 2(b), Kroll was selected after a competitive bidding process in which three settlement administrators submitted proposals: Kroll, Epiq Systems, Inc., and Simpluris, Inc. Roberts Decl. ¶ 47. All three administrators' proposed plans included a combination of direct (mail and e-mail) and publication notice designed to reach at least 70% of the Settlement Class. *Id*. The Parties concluded that Kroll's plan provided the best opportunity to reach the greatest number of Class Members and allow for the highest potential claims rate for this case at a competitive cost. *Id.* ¶ 48. The Declaration of Carla Peak ("Peak Decl.") describes the notice plan in full, as well as Kroll's credentials, procedures for securely handling class member data, and Kroll's acceptance of responsibility and maintenance of insurance in case of errors. *See* District Guideline 2(b); *see also generally* Peak Decl.

In accordance with District Guideline 2(a), Kroll has been engaged by Bursor & Fisher, P.A. on ten (10) other class action settlements over the last two years. Peak Decl. ¶ 8. Pursuant to District Guideline 1(f), Plaintiff estimates that approximately 1% to 6% of Settlement Class Members are

likely to submit a Claim Form. *See id.* ¶ 34.  In accordance with District Guideline 2(b), the cost of settlement administration is estimated to be $312,510, or approximately 8.1% of the value of the settlement fund.  *Id.* ¶ 37.  This amount will be paid out of the Settlement Fund and is reasonable. The costs of the notice program are attributable to mail notice (which "is typically the preferred form of notification because of its efficacy") and media notice (which was needed to "reach the remainder of Settlement Class Members").  *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (approving administration costs of 20% of fund where notice was provided via mail, "email, print publication, and online advertisement").

## ARGUMENT

### I.  THE SETTLEMENT CLASS SATISFIES FED R. CIV. P. 23(A) AND 23(B)(3)

#### A.  Rule 23(a)(1) – Numerosity

"[N]umerosity is satisfied if the class includes forty or more members." *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022) (cleaned up).  Here, there are at least 335,000 members of the Settlement Class.  Roberts Decl. ¶ 15.

#### B.  Rule 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (cleaned up). "This requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (cleaned up).  Here, multiple common questions of fact and law exist, including but not limited to whether the Trackers are "pen registers" pursuant to Cal. Penal Code § 638.50(b); whether Defendant installed or used the Trackers, and whether Defendant is an "electronic communications services provider."

#### C.  Rule 23(a)(3) – Typicality

Fed. R. Civ. P. 23(a)(3) requires that the claims of the representative plaintiff be "typical of the claims … of the class."  Here, the claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class, visited the Website and allegedly had her IP address and other information collected by the Trackers, which Defendant

allegedly installed and used. *See* Compl. ¶¶ 87-93.

### D.     Rule 23(a)(4) – Adequacy

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).

As to the first inquiry, Plaintiff and Class Counsel have no conflicts of interest with the Class. *See* Roberts Decl. ¶¶ 41, 45. Rather, the named Plaintiff, like each absent Class Member, has a strong interest in proving Defendant's common course of conduct and obtaining redress. *Id.* ¶ 45. As to the second inquiry, Plaintiff and her counsel vigorously prosecuted this action and will continue to do so through final approval. *Id.* ¶¶ 30, 43. Plaintiff and counsel brought a novel theory of liability, defeated a motion to dismiss, conducted jurisdictional discovery, and attended a full-day mediation with Ambassador Jeff Bleich (Ret.). *Id.* In addition, Plaintiff's counsel conducted significant research regarding the technology at issue, including data brokers and real-time bidding. *Id.* ¶ 30(vii). Plaintiff's counsel also has extensive experience litigating privacy cases, particularly under the CIPA. *Id.* ¶¶ 39-40; *see also id.* Ex. 5 (firm resume of Bursor & Fisher, P.A.). And Plaintiff has remained engaged in the litigation, including communication with her counsel, reviewing documents, and participating in a screening of her device and web traffic sufficient to ascertain whether she had claims. Roberts Decl. ¶ 44.

### E.     Rule 23(b)(3) – Predominance And Superiority

Fed. R. Civ. P. 23(b)(3) requires Plaintiff to prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, as this Court has found in other CIPA litigation, predominance is readily met. *See Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *4-9

(N.D. Cal. Nov. 26, 2024) (Breyer, J.). Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Courts have found that, even in cases like this one seeking statutory damages under the CIPA, superiority is met. *See Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *10 (C.D. Cal. July 24, 2017) ("[T]he Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.") (cleaned up).

## II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Fed. R. 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  To make this determination, the Court evaluates the factors set forth in that rule.  *Id.*  Each factor is met here.[5]

### A.    Fed. R. Civ. P. 23(e)(2)(A) – Plaintiff And Her Counsel Have Adequately Represented The Class

Because adequacy is met (Argument § I.D, *supra*), "Rule 23(e)(2)(A) is also met." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020).

### B.    Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was Negotiated At Arm's Length

Both Proposed Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides." *Hilsley*, 2020 WL 520616, at *5; *see also* Roberts Decl. ¶¶ 29, 31, 40-41.  Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations facilitated by a neutral mediator," Ambassador Jeff Bleich (Ret.), who has mediated other major class action privacy settlements.  *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he

---

[5] Courts in this Circuit also evaluate reasonableness under the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).  These factors "substantively track those provided in [the current version of] Rule 23(e)(2)." *Greer v. Dick's Sporting Goods, Inc.,* 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020).  Thus, satisfying Fed. R. Civ. P. 23(e)(2) equates to satisfaction of *Hanlon*.

assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (cleaned up); *see also* Roberts Decl. ¶¶ 3, 9, 11.

**C.      Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate**

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6. Here, the relief provided for compares favorably to Plaintiff's potential actual damages and other data privacy settlements. *See* Summary Of The Settlement § II, *supra*. Further, all factors favor approval.

*1.      The Costs, Risks, And Delay Of Trial And Appeal*

While Plaintiff contends her CIPA claim maps cleanly onto the plain text of the statute, her theory of liability was certainly novel. At the time Plaintiff brought her claim, only one federal court had held that CIPA §§ 638.50-638.51 applied to internet communications, and several state courts had rejected Plaintiff's theory of liability before this Court issued its Motion to Dismiss Order. *See* Roberts Decl. ¶ 25. Certainly, the authority has moved in Plaintiff's favor in the last year (thanks, in no small part, to the work of Plaintiff and her counsel). *See Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *2 (N.D. Cal. Oct. 9, 2025) ("Several judges in this district, including Judges Lin [B&F decisions], Orrick, Pitts, Ryu [B&F decision], Tigar, and the undersigned [B&F decisions], have held that such allegations suffice at the pleading stage."). But in February 2024, Plaintiff was breaking new ground. *Katz-Lacabe*, 2024 WL 4804974, at *3 ("The novelty and scope of Plaintiffs' privacy allegations made this a particularly risky case to litigate. Unlike many class actions … Class Counsel independently investigated, documented, and innovatively challenged the underlying business model of one of the largest corporations in the world.").

Further, other CIPA litigation before this Court illustrates the risk inherent in such novel data privacy litigation. Plaintiff survived a motion to dismiss here. *See Hazel v. Prudential Financial,*

*Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023) (Breyer, J.).  Plaintiff may have even certified a class, and she is confident she would.  Roberts Decl. ¶ 30; *see also Torres*, 2024 WL 4894289.  But if discovery showed the technology did not map as cleanly onto the statute as Plaintiff alleges, then she would lose at summary judgment after years of costly and contentious litigation.  *Torres*, 2025 WL 1135088.[6]  Defendant planned to mount all of those challenges and then some, as discussed below.  Roberts Decl. ¶ 29.

In addition, the risks Plaintiff faced here were not just in the courtroom, but in the legislature. In early 2025, several California proposed Senate Bill 690, which sought to add a retroactive, "commercial business purposes" exception to multiple provisions of the CIPA, including CIPA § 638.51.  Roberts Decl. ¶ 28.  Defendant supported the bill and its representative testified at hearings before the Senate and Assembly.  *Id.*  Although the ultimate impact of the bill on Plaintiff's claim is uncertain, the bill remains pending.  *Id.*  Thus, there remains a considerable possibility that Plaintiff could have prevailed in court only to have Defendant snatch victory from the jaws of defeat in the legislature, if Plaintiff did not settle now.

Last, all of these risks are compounded by the defenses Defendant would raise in this matter, including that Settlement Class Members entirely anonymous and therefore not ascertainable, that injury and damages cannot be shown, that statutory damages cannot be established on a classwide basis, and that the Court should revisit the applicability of the statute to the instant claims in light of subsequently issued decisions.  Roberts Decl. ¶ 29.  If necessary, Defendant planned to mount these challenges through appeal.  *Id.*

As such, "settlement is favored where, as here, significant procedural hurdles remain."  *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014); *see id.* ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as the Court."); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (when considering the "vagaries of litigation," the "significance of immediate

---

[6] The *Hazel/Torres* case was a follow-on case to *Javier v. Assurance IQ, LLC* that was also before this Court, and which faced several motions to dismiss and a trip to the Ninth Circuit before being finally dismissed with prejudice.  Roberts Decl. ¶ 26.  This further illustrates the risks inherent in novel data privacy litigation such as this case.

recovery by way of the [proposed] compromise" is much preferable "to the mere possibility of relief in the future, after protracted and expensive litigation").

> ### 2. The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." 2018 Advisory Note to Fed. R. Civ. P. 23(e)(2)(C)-(D). Here "Class Members must submit a Claim Form in order to receive any cash award. However, the Claim Form is a simple one-page form that asks each potential Class Member to answer a single question—namely," to attest that they accessed Defendant's website or mobile application in California during the Class Period. *See Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *11 (N.D. Cal. July 23, 2021); *see also* Settlement Ex. A. Such a proposed method of distribution is reasonable and "not burdensome." *Norton*, 2021 WL 3129568, at *11. Further, a claims process is necessary given not all Settlement Class Members are subscribers, meaning Defendant cannot directly contact and pay all Settlement Class Members.

> ### 3. The Terms Of Any Proposed Award Of Attorney's Fees

Proposed Class Counsel will apply to the Court for an award of attorneys' fees of 25% (or $962,500) of the Settlement Fund. Settlement ¶ 8.1. The Court need not "determine attorney's fees at the preliminary approval stage" and Class Counsel will "fully address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys' Fees, Costs, and [Service Award]." *Hilsley*, 2020 WL 520616, at *7. However, the proposed fee request of 25% of the Settlement Fund is "in line with the range of awards in this Circuit." *Katz-Lacabe*, 2024 WL 4804974, at *4. The reasonableness of this award is confirmed by a lodestar crosscheck. As of October 14, 2025, Proposed Class Counsel has billed a total of 478.3 hours to this matter for a lodestar of $323,437.50. Roberts Decl. ¶ 34; *see also id.* Ex. 3. The requested fee award thus represents a multiplier of 2.98 based on their current lodestar, which is reasonable. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); *Steiner v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85). This is especially so given Proposed Class Counsel will spend additional time on this matter assisting with the administration of notice and preparing for and

moving for final approval, thus reducing the lodestar multiplier.  Roberts Decl. ¶ 32; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement").

In addition, Proposed Class Counsel will also apply for $26,797 in reasonable litigation costs and expenses necessary for the prosecution of this Action, including court fees, research fees, service fees, and travel expenses related to the mediation.  Roberts Decl. ¶ 35; *see also id.* Ex. 4; *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client.") (cleaned up).  Should Proposed Class Counsel incur additional expenses related to securing Final Approval or administering the Settlement, Proposed Class Counsel will apply for reimbursement of those expenses as well.  Roberts Decl. ¶ 36.

### 4.    *Any Agreement Required To Be Identified*

Other than the Settlement, no such agreement exists.

### D.    **Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally**

Each Settlement Class Member who submits an Approved Claim by the Claims Deadline will receive the same *pro rata* portion of the Settlement Fund. Settlement ¶ 2.1(b).  Thus, the Settlement does not "improperly grant preferential treatment to class representatives or segments of the class." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018).

## III.    **THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED**

Fed. R. Civ. P. 23(c)(2) requires the Court to "direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," although actual notice is not required.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Pursuant to District Guideline 3, "[t]he notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstance."

Here, the Parties have proposed Kroll as the Settlement Administrator.  The notice program involves direct notice via mail and e-mail to Settlement Class Members who are subscribers, and publication (digital) notice for the remainder of the Settlement Class who are not subscribers.  *See*, *e.g.*, Peak Decl. ¶¶ 16-29.  Consistent with the Federal Judicial Center's 2010 Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide,[7] the notice program is designed to reach at least 70% of the Settlement Class.  *Id.* ¶ 11.  Thus, the proposed notice plan represents the best notice practicable, and similar notice programs have been approved by courts in this Circuit.  *Stone v. Howard Johnson Int'l, Inc.*, 2015 WL 13648551, at *2 (C.D. Cal. June 15, 2015) (approving notice via post card and publication); *Abat v. Chase Bank USA, N.A.*, 2011 WL 13130637, at *6 (C.D. Cal. July 11, 2011) (approving notice to class via email and mail).

Consistent with District Guidelines 3-5, the proposed notice plan also includes CAFA notice (Peak Decl. ¶ 12); a settlement website and toll-free telephone number (*id.* ¶¶ 30-31); clear and informative notice forms that provide a summary of the claims and class action procedures, information about accessing the docket via PACER, information on how to submit a claim, and notice of the Final Approval Hearing (Settlement Exs. B-D); and non-burdensome instructions and procedures for opting out of or objecting to the Settlement (*id.*).  This satisfies the notice required under Fed. R. Civ. P. 23.  *See Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011) ("A class action settlement notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up).  Thus, the proposed notice plan constitutes the best practicable notice to Settlement Class Members and complies with the requirements of Due Process.

## IV.  THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FINAL APPROVAL HEARING

In connection with preliminary approval, the Court must set a Final Approval Hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement.  Plaintiff proposes the following schedule:

| EVENT | PROPOSED DEADLINE |
|---|---|
| CAFA Notice Pursuant to 28 U.S.C. § 1715(b) | October 24, 2025 |

---

[7] Available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

| EVENT | PROPOSED DEADLINE |
|---|---|
| Establishment of Settlement Website | December 29, 2025 |
| Notice Date | January 20, 2026 |
| Motion for Attorneys' Fees, Costs, Expenses, and Service Award | March 6, 2026 |
| Objection and Opt-Out Deadline | March 23, 2026 |
| Claims Deadline | April 20, 2026 |
| Final Approval Motion and Response to Any Objections | May 4, 2026 |
| Deadline to Submit Notices of Appearance at the Final Approval Hearing | May 4, 2026 |
| Supplement declaration (1) stating the number of claims, requests for exclusion, and objections to date and (2) attesting that Notice was disseminated consistent with the Settlement | May 12, 2026 |
| Final Approval Hearing | May 22, 2026 at 10:00 a.m. (via Zoom) |
| Award Issuance Date | Begins 14 days after Effective Date |

## **CONCLUSION**

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Settlement Class for settlement purposes only and appoint Settlement Class Counsel, approve the proposed Notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

Dated: October 15, 2025

Respectfully submitted,

By: */s/ Max S. Roberts*
    Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
    klynn@bursor.com
    jwilner@bursor.com

*Attorneys for Plaintiff*