**BURSOR & FISHER, P.A**.
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        klynn@bursor.com
        jwilner@bursor.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALIAH MIRMALEK, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>                              Defendant. | Case No. 3:24-cv-01797-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS**<br><br>Date:   June 26, 2026<br>Time:  10:00 a.m.<br>Ctrm:  Via Zoom<br>Judge: Hon. Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 26, 2026 at 10:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102 in the courtroom of Hon. Charles R. Breyer (via Zoom), Plaintiff Taliah Mirmalek ("Plaintiff"), by and through her undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(h), for the Court to: (i) award Class Counsel nine-hundred sixty-two thousand five-hundred dollars ($962,500.00) in attorneys' fees; (ii) award Class Counsel twenty-six thousand nine hundred thirty-three dollars and eighty-six cents ($26,933.86) in reasonable litigation costs and expenses; (iii) award Plaintiff a service award of $5,000; and (iv) enter the [Proposed] Order submitted herewith.

This motion is based on Plaintiff's Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees, Costs, Expenses, and Service Awards, the accompanying Declaration of Max S. Roberts and attachments thereto, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated: April 3, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*

Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         klynn@bursor.com
         jwilner@bursor.com

*Class Counsel*

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................................2

SUMMARY OF THE PROPOSED SETTLEMENT ....................................................................2

ARGUMENT .................................................................................................................................3

I.  CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE
    PERCENTAGE OF THE BENEFIT METHOD.................................................................3

    A.  The Settlement Confers Substantial Benefits To The Class.....................................4

    B.  The Risk Of Litigation Supports The Fee Request ..................................................5

    C.  Class Counsel Performed Quality Work In A Complex Case...................................7

    D.  The Contingent Nature Of The Fees And Financial Burden Carried
        By Class Counsel Support The Fee Request .............................................................8

    E.  Market Rates As Reflected By Awards In Similar Cases Support
        Class Counsel's Fee Request....................................................................................9

II. CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER A
    LODESTAR CROSS-CHECK...........................................................................................9

    A.  Class Counsel Spent A Reasonable Number Of Hours On This
        Litigation At A Reasonable Hourly Rate ...............................................................10

    B.  All Relevant Factors Support Applying A 2.23 Multiplier To Class
        Counsel's Lodestar .................................................................................................12

III. CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY
     INCURRED TO ACHIEVE THE BENEFITS OBTAINED.............................................13

IV. PLAINTIFF'S REQUESTED SERVICE AWARD IS REASONABLE ...........................14

CONCLUSION .............................................................................................................................15

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ................................................................................................ 10

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................................... 14

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43 (1st Dist. 2008) ........................................................................................ 12

*Chea v. Lite Star ESOP Committee*,
   2026 WL 383318 (E.D. Cal. Feb. 11, 2026) ......................................................................... 2, 3, 5

*Corzine v. Whirlpool Corp.*,
   2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ............................................................................ 13

*Curran v. City of Oakland*,
   2025 WL 3485360 (N.D. Cal. Dec. 4, 2025) ........................................................................ 10, 11

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................................... 12

*Dynabursky v. Alliedbarton Sec. Servs., LP*,
   2016 WL 8921915 (C.D. Cal. Aug. 15, 2016) ............................................................................. 6

*Elder v. Hilton Worldwide Holdings, Inc.*,
   2021 WL 4785936 (N.D. Cal. Feb. 4, 2021) ............................................................................... 11

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ..................................................................................................... 12

*Fregosa v. Mashable, Inc.*,
   2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ................................................................................. 5

*Gamino v. KPC Healthcare Holdings, Inc.*,
   2023 WL 3325190 (C.D. Cal. Mar. 11, 2023) ............................................................................. 11

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) .................................................................................................... 11

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ................................................................................................................. 8

*Greko v. Diesel U.S.A., Inc.*,
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ............................................................................. 14

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
  2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) ................................................................... 11

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ............................................................................................. 3, 13

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ........................................................................................ 10

*Hendricks v. Starkist Co.*,
  2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .................................................................. 11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................................... 12

*Hightower v. JPMorgan Chase Bank, N.A.*,
  2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) ..................................................................... 14

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................................... 9

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................................................................. 4, 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................................... 3

*In re California Pizza Kitchen Data Breach Litig.*,
  129 F.4th 667 (9th Cir. 2025) .............................................................................................. 9

*In re Google Referrer Header Privacy Litig.*,
  2023 WL 6812545 (N.D. Cal. Oct. 16, 2025) ...................................................................... 9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................... 7

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) .................................................................................... 8

*In re Vizio, Inc. Consumer Privacy Litig.*,
  2019 WL 12966638 (C.D. Cal. July 31, 2019) ............................................................ 6, 7, 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. L*iab. Litig.,
  746 F. App'x 655 (9th Cir. 2018) ....................................................................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................................... 8

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) ............................................................................... 14

*In re Zoom Video Communications, Inc. Privacy Litig.*,
  2022 WL 1593389 (N.D. Cal. Apr. 21, 2022)................................................................... 9

*Katz-Lacabe v. Oracle Am., Inc.*,
  2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ........................................................... 9, 11

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
  2022 WL 2288895 (C.D. Cal. Jan. 12, 2022)................................................................ 11

*LA Int'l Corp. v. Prestiage Brands Holdings, Inc.*,
  168 F.4th 608 (9th Cir. 2026).......................................................................................... 10

*Lalli v. First Team Real Estate—Orange Cnty.*,
  2022 WL 8207530 (C.D. Cal. Sept. 6, 2022)................................................................... 6

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014) .................................................................. 3

*Mauss v. NuVasive, Inc.*,
  2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ................................................................... 5

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
  2018 WL 3474472 (E.D. Cal. July 19, 2018).................................................................. 8

*McKnight v. Hinojosa*,
  54 F.4th 1069 (9th Cir. 2022)........................................................................................ 12

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ...................................................................................................... 11

*Montera v. Premier Nutrition Corp.*,
  2025 WL 751542 (N.D. Cal. Mar. 10, 2025) .................................................................. 4

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996)........................................................................................... 12

*Newell v. Ensign United States Drilling (California) Inc.*,
  2022 WL 2704551 (E.D. Cal. July 12, 2022).................................................................. 5

*Nwabueze v. AT&T, Inc.*,
  2014 WL 324262 (N.D. Cal. Jan. 29, 2014).................................................................... 3

*Perez v. Rash Curtis & Associates*,
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)............................................................... 11

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
  281 F. Supp. 3d 833 (N.D. Cal. 2017)........................................................................... 13

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)......................................................................................... 14

*Rose v. Variety Media, LLC*,
   2025 WL 2794920 (Los Angeles Super. Ct. Sept. 24, 2025) ........................................................ 6

*S.G. v. City of Los Angeles*,
   2024 WL 5286227 (C.D. Cal. Nov. 26, 2024) ............................................................................. 11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................................................... 13

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ............................................................................................... 12

*Sutter Health Uninsured Pricing Cases*,
   171 Cal. App. 4th 495 (3d Dist. 2009) ....................................................................................... 12

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................................. 14

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ................................................................................................. 8

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ......................................................................................... 4, 9, 12

*Wakefield v. ViSalus, Inc.*,
   51 F.4th 1109 (9th Cir. 2022) ..................................................................................................... 5

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................................................ 3

**STATUTES**

Cal. Penal Code § 637.2(a)(1) ........................................................................................................ 4

**OTHER AUTHORITIES**

Cal. Prac. Guide Civ. App. & Writs Ch. 15-F ................................................................................ 6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **INTRODUCTION**

Plaintiff and Class Counsel have achieved an outstanding result in this case. The $3.85 million non-reversionary Settlement Fund[1] they negotiated provides a real and substantial monetary benefit to hundreds of thousands of Settlement Class Members. *See* Apr. 6, 2026 Declaration of Max S. Roberts (the "Apr. Roberts Decl.") ¶¶ 5-6, 9; *see also* Oct. 15, 2026 Declaration of Max S. Roberts (ECF No. 45-1) (the "Oct. Roberts Decl.") ¶¶ 13-23. This Settlement brings certainty, closure, and significant and valuable relief for individuals to what would otherwise likely be a contentious and costly litigation where Plaintiff's relatively novel claims faced significant risks inside and outside this Court. Apr. Roberts Decl. ¶¶ 14-16; Oct. Roberts Decl. ¶¶ 24-30.

Class Counsel now request that the Court approve an award of attorneys' fees in the amount of $962,500.00, or 25% of the $3.85 million non-reversionary Settlement Fund. Calculating the fee award based on a percentage of the Settlement Fund is straightforward, fair, and strongly supported by Ninth Circuit case law. Cross-checking this percentage fee against Class Counsel's lodestar validates the reasonableness of Class Counsel's fee request. As of March 20, 2026, Class Counsel had worked 585.2 hours on this case for a total lodestar fee, at current billing rates, of $431,407.50. Apr. Roberts Decl. ¶ 26; *see also id.* Ex. 4 (Class Counsel's detailed billing records for this case). Class Counsel's blended hourly rate of $737.20 is within the bounds of reasonable hourly rates in California and elsewhere. *Id.* ¶¶ 31-35. Thus, a fee award of $962,500 represents a modest 2.23 multiplier over the base lodestar fee, and will likely result in a 2.06 multiplier once further work is performed in moving for Final Approval and continuing to oversee the claims administration process. Apr. Roberts Decl. ¶ 27. This strongly supports the reasonableness of the fee request.

Class Counsel also requests that the Court award reimbursement of litigation costs and expenses of $26,933.86. As detailed herein, these expenses were reasonable and necessarily incurred for the prosecution of this action. Apr. Roberts Decl. ¶¶ 28-29.

Finally, Plaintiff requests that the Court award her a service award in the amount of $5,000

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement (ECF No. 73-1).

each to account for the significant time and effort they invested in this case on behalf of the Class. Apr. Roberts Decl. ¶¶ 36-40.

For the foregoing reasons, Plaintiff's Motion should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this matter are discussed in detail in both the October and April Roberts Declarations. Oct. Roberts Decl. ¶¶ 4-12; Apr. Roberts Decl. ¶¶ 10-13.

## SUMMARY OF THE PROPOSED SETTLEMENT

Pursuant to the Settlement, Defendant has established a $3.85 million non-reversionary Settlement Fund from which all Settlement Class Members with Approved Claims are entitled to a *pro rata* share. Settlement ¶¶ 2.1(a)-(b). In accordance with the Northern District of California's Procedural Guidelines for Class Action Settlements, the key terms of the settlement and its administration were summarized in Plaintiff's Motion for Preliminary Approval (ECF No. 45).

As of April 2, 2026, 57,900 claims have been received, meaning that, assuming all of these claims are valid and all requested fees and costs are awarded, Settlement Class Members will each receive approximately $44. Apr. Roberts Decl. ¶ 9.[2] This compares favorably to other privacy settlements (ECF No. 45 at 4-5) and far exceeds any actual damages Settlement Class Members may have recovered in this matter. *See* Argument § I.A, *infra*.

The Settlement permits Class Counsel to petition for attorneys' fees, costs, and expenses of no more than one-third of the Settlement Fund (*i.e.*, $1,283,333.33), and for Plaintiff to "seek no more than $5,000 [] as an incentive award." Settlement ¶¶ 8.1, 8.3. In addition, "the Settlement Agreement does not include a clear sailing provision, and any remaining residual funds are to be distributed" *pro rata* to Settlement Class Members with Approved Claims or "to a *cy pres* recipient," the Consortium of Cybersecurity Clinics. *Chea v. Lite Star ESOP Committee*, 2026 WL 383318, at *7 (E.D. Cal. Feb. 11, 2026); *see also* Settlement ¶¶ 2.1(d)-(e), 8.1; Apr. Roberts Decl. ¶ 8.

---

[2] The Claims Deadline in this matter is May 20, 2026. ECF No. 52. Per the Court's Order, Class Counsel will provide a Supplemental Declaration from the Settlement Administrator with the final claims count by June 12, 2026. *Id.*

**<u>ARGUMENT</u>**

Under Ninth Circuit precedent, the Court may analyze and issue an attorneys' fee award: (i) as a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief; or (ii) under the "lodestar" method. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Nwabueze v. AT&T, Inc.*, 2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014). Both the percentage method and lodestar method require examination of (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (v) awards made in similar cases. *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014). Class Counsel's fee request is reasonable under either approach.

Further, an attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (cleaned up). To support an expense award, plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guideline 6. Class Counsel has done that here.

Here, Class Counsel requests an award of $962,500.00 in attorneys' fees. This amount represents 25% of the $3.85 million common fund, which represents a modest 2.23 multiplier over Class Counsel's current lodestar, and will likely represent a 2.06 multiplier after accounting for time that will be spent on final approval and overseeing claims administration. Apr. Roberts Decl. ¶¶ 26-27. Class Counsel also requests reimbursement of $26,933.86 in litigation costs and expenses. *Id.* ¶¶ 28-29. For the reasons explained below, Class Counsel requests are reasonable and should be awarded.

**I.    CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE PERCENTAGE OF THE BENEFIT METHOD**

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Chea*, 2026 WL 383318, at *7. In

deciding on a fee award, the Court must consider "all of the circumstances of the case." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002). "The Ninth Circuit has identified five factors which may be probative: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *9 (N.D. Cal. Aug. 17, 2018). Each of these factors justifies the requested fee award.

### A.    The Settlement Confers Substantial Benefits To The Class

"[T]he overall result and benefit to the Class … has been called the most critical factor in granting a fee award." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *9 (N.D. Cal. Aug. 17, 2018) (cleaned up). The considerations offered by the Settlement provide excellent results for the Settlement Class. The Settlement creates a non-reversionary $3.85 million Settlement Fund from which "[e]ach Settlement Class Member with an Approved Claim shall be entitled to a *pro rata* portion." Settlement ¶ 2.1(b). As detailed in Plaintiff's Motion for Preliminary Approval, the Settlement provides for a recovery far above any actual damages per Approved Claim:

> by allegedly installing and using the Trackers, Plaintiff would have argued that her information was sold to advertisers for $0.20, and would have been sold for less had Defendant not allegedly installed and used the Trackers.

> Thus, Plaintiff's actual damages would likely be a few cents on the dollar. By comparison, the Settlement provides a recovery of between $2.14 and $11.49 per Settlement Class Member based on an estimated class size of 335,000 to 1.8 million [and an expected recovery of as much as $58 based on current claims rates].

*See* Oct. Roberts Decl. ¶¶ 22-23. Actual damages are the proper measure of comparison here rather than statutory damages. Although the CIPA provides for $5,000 in statutory damages per violation (Cal. Pen. Code § 637.2(a)(1)), as Judge Lin acknowledged in preliminarily approving another CIPA § 638.51 settlement, "plaintiffs are right that the best measure is actual damages, not statutory damages in terms of determining reasonableness. There's a real likelihood that statutory damages would be excessive in a case like this." Apr. Roberts Decl. Ex. 1 at 4:11-14; *see also Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025) (awarding reduced

statutory damages after finding full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals"); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of $925 million in statutory damages). Thus, measuring the relief provided to Settlement Class Members as compared to statutory damages may not be proper.

Accordingly, a recovery of more than 100% of actual damages is more than reasonable. *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees where settlement was "approximately 23 to 34 percent" of maximum damages); *Newell v. Ensign United States Drilling (California) Inc.*, 2022 WL 2704551, at *5 (E.D. Cal. July 12, 2022) (same where "the settlement amount of $2,400,000 correlates to a 38 percent recovery of their maximum potential damages"); *Chea*, 2026 WL 383318, at *9 (same where the settlement provided "approximately 45%-75% of the estimated maximum recovery").

### B.    The Risk Of Litigation Supports The Fee Request

This factor looks to the risk and novelty of the claims at issue. Both are certainly present here. *See* Oct. Roberts Decl. ¶¶ 24-30; Apr. Roberts Decl. ¶¶ 14-16. Whether or not claims like Plaintiff's are currently common, they certainly were not at the time this case was brought. Quite the opposite, "[a]t the time Plaintiff brought her claim in February 2024, only one court had" sustained an analogous claim while "several state courts had rejected the theory by the time any motion to dismiss was brought" here. Oct. Roberts Decl. ¶ 25. To the extent claims like Plaintiff's have been solidified over the last two years, that is *substantially* attributable to work performed by Plaintiff and Class Counsel. *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *2 (N.D. Cal. Oct. 9, 2025) (Breyer, J.) ("Several judges in this district, including Judges Lin [B&F decisions], Orrick, Pitts, Ryu [B&F decision], Tigar, and the undersigned [B&F decisions], have held that such allegations suffice at the pleading stage."). And, of course, there was and remains a risk that all of this caselaw could have been eliminated by legislative developments. Oct. Roberts Decl. ¶ 28.

In fact, the risks to this case articulated in Plaintiff's Preliminary Approval Motion have only been compounded since that time. On November 21, 2025, in *Rose v. Variety Media, LLC*, Case No. 25STCV01865 (Los Angeles Super. Ct.)—another case alleging violations of CIPA § 638.51—the

defendant filed a petition for writ of mandate following the overruling of the defendant's demurrer. Apr. Roberts Decl. ¶ 14; *see also Rose v. Variety Media, LLC*, 2025 WL 2794920 (Los Angeles Super. Ct. Sept. 24, 2025). The question in that petition is whether CIPA § 638.51 applies to non-telephonic technology (as this Court ruled) or is limited to only telephonic technologies. *Id*. On January 8, 2026, the Court of Appeal for the Second District issued an order to show cause requesting further briefing from the real party in interest (also represented by Class Counsel). *Id.*; *see also Variety Media LLC v. Super. Ct.*, Case No. B350578 (Ct. App. 2d Dist.).

To be sure, Class Counsel believes they will ultimately prevail on the writ petition. Apr. Roberts Decl. ¶ 15. And the order to show cause "does *not* amount to a determination that petitioner is correct on the merits; it merely determines that writ relief is the only adequate avenue for review." CAL. PRAC. GUIDE CIV. APP. & WRITS Ch. 15-F, at § 15:153 (emphasis in original). Nonetheless, if the Court of Appeal were to side with the petitioner (*i.e.*, find that CIPA § 638.51 is limited to only telephonic technology), then Plaintiff's claim here would likely be eviscerated. Apr. Roberts Decl. ¶ 15. At the very least, had this matter continued, Defendant would have likely requested to stay the case pending resolution of the writ petition, thus delaying any potential relief to Settlement Class Members. *Id*.

The writ petition underscores the significant risks to Plaintiff's relatively novel claim that Plaintiff pointed out in her Motion for Preliminary Approval (Oct. Roberts Decl. ¶¶ 24-30; Apr. Roberts Decl. ¶ 16), further justifying the requested fee award. *See*, *e.g.*, *In re Vizio, Inc. Consumer Privacy Litig.*, 2019 WL 12966638, at *7 (C.D. Cal. July 31, 2019) (finding fee award reasonable where recent Ninth Circuit decision "threatens to undermine Plaintiffs' theory of VPPA liability, and Plaintiffs' Wiretap Act claim raises an issue of first impression in the Ninth Circuit"); *Lalli v. First Team Real Estate—Orange Cnty.*, 2022 WL 8207530, at *5 (C.D. Cal. Sept. 6, 2022) (same where recent Supreme Court holding "would have likely precluded some of Lalli's claims"); *Dynabursky v. Alliedbarton Sec. Servs., LP*, 2016 WL 8921915, at *9 (C.D. Cal. Aug. 15, 2016) (same where the matter was stayed "pending the Ninth Circuit's decision" in a related case").

### C.    Class Counsel Performed Quality Work In A Complex Case

The prosecution of a complex class action like this one "requires unique … skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (cleaned up). This is particularly so in data privacy cases involving technical expertise in an evolving area of the law.  Given all the attendant risks of CIPA litigation, Class Counsel was called upon to "astutely navigate[] a technically complex, procedurally fraught, and legally uncertain course to achieve a superior result." *In re Vizio*, 2019 WL 12966638, at *7.  As noted above, this is the second-ever class settlement under CIPA § 638.51, with the only other such settlement being secured by Class Counsel.

"The parties engaged in vigorous motion practice, including Class Counsel's successful defense against" Defendant's motion to dismiss. *In re Vizio*, 2019 WL 12966638, at *7.  The motion to dismiss presented a relatively novel theory of liability, and one where "in February 2024, only one court had" sustained similar allegations and "several state courts had rejected the theory by the time the motion to dismiss was brought."  Oct. Roberts Decl. ¶ 25.  And again, although the authority has moved in Plaintiff's favor in the last year, that is attributable "to the work of Plaintiff and undersigned counsel" in paving the trail in this case and others.  *Id*.

Moreover, in the months of litigation that followed the denial of Defendant's motions, Class Counsel (i) conducted factual research regarding data brokers, real-time bidding, and cookie syncing that would have been used to amplify the allegations here; (ii) negotiated the Settlement at arm's length with Defendant, including attending a mediation with Ambassador Jeff Bleich; (iii) successfully moved for preliminary approval; and (iv) managed (and are continuing to manage) the dissemination of notice and the claims process.  Oct. Roberts Decl. ¶¶ 4-12, 31; Apr. Roberts Decl. ¶¶ 10-11, 13, 24.

The work performed by Class Counsel in this case thus supports their requested fee award. *Id.*; *see also In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 (approving attorneys' fees where class counsel "performed significant factual investigation prior to bringing these actions … and participated in protracted negotiations with Anthem").

### D.    The Contingent Nature Of The Fees And Financial Burden Carried By Class Counsel Support The Fee Request

To date, Class Counsel has worked for two years with no payment, and no guarantee of payment absent a successful outcome. That presented considerable risk. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) ("Class Counsel prosecuted the case on a contingency basis, which presented considerable risk."). "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *In re Vizio*, 2019 WL 12966638, at *8 (cleaned up); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, is significant. *Wash. Pub. Power.* 19 F.3d at 1300. In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> [i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases … [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (cleaned up); *see also McKeen-Chaplin v. Provident Savings Bank, FSB*, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018) ("Counsel has not received payment for the vast majority of its time spent on this case over the last five and a half years, and took on significant financial risk by taking on this action on a contingency fee basis."); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (cleaned up); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.").

Further, if the case had advanced through class certification, Class Counsel's expenses would have increased manifold, and Class Counsel would have been required to advance these expenses

potentially for several years to litigate this action through judgment and appeals.  This is compounded by the risky nature of this case.  Argument § I.B, *supra*; *see also* Oct. Roberts Decl. ¶¶ 24-30; Apr. Roberts Decl. ¶¶ 14-16.  And Class Counsel has already expended more than $26,000 in out-of-pocket litigation expenses here.  Apr. Roberts Decl. ¶ 28.  By achieving an early resolution, Class Counsel "reduce[d] attorneys' fees, preserve[d] value for the class, and" obviated the significant risk of non-payment.  *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025).

### E. Market Rates As Reflected By Awards In Similar Cases Support Class Counsel's Fee Request

Fee awards must also consider the interest in "encourage[ing] plaintiff's attorneys to move for early settlement, provid[ing] predictability for the attorneys and the class members, and reduc[ing] the time consumed by counsel and court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

Attorneys' fees of 25% or more of the settlement fund are consistently approved in data privacy class actions such as this one. *See*, *e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *4 (N.D. Cal. Nov. 15, 2024) ("The requested 25 percent fee award is in line with the range of awards in this Circuit."); *In re Zoom Video Communications, Inc. Privacy Litig.*, 2022 WL 1593389, at *11 (N.D. Cal. Apr. 21, 2022) ("The court grants Class Counsel's request for fees of twenty-five percent of the Settlement Amount, in line with the Ninth Circuit's benchmark and the awards in similar cases."); *In re Google Referrer Header Privacy Litig.*, 2023 WL 6812545, at *9 (N.D. Cal. Oct. 16, 2025) ("[C]ounsel's request [for attorneys' fees of 25% of the settlement fund] is not disproportionate to the class benefit and is comparable to awards approved in other similar internet privacy class actions…").

## II. CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER A LODESTAR CROSS-CHECK

Courts in the Ninth Circuit often examine the lodestar calculation as a cross-check on the percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050.  The cross-check analysis is a two-step process.  *First*, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the

attorneys. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013). *Second*, the Court cross-checks the proposed percentage fee against the lodestar. *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)." *Id.* (cleaned up). Here, the lodestar cross-check confirms the reasonableness of Class Counsel's requested fee.

### A.    Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel has submitted their detailed daily billing records showing what work was done and by whom. Roberts Decl. Ex. 3. Those records confirm Class Counsel's efficient and reasonable billing.

As to the time spent on this matter, "the Ninth Circuit has instructed district courts to defer to the winning lawyers' professional judgment as to how much time they were required to spend on the case." *Curran v. City of Oakland*, 2025 WL 3485360, at *6 (N.D. Cal. Dec. 4, 2025) (cleaned up). Here, Class Counsel has spent 483.3 hours on this matter over the last two years, and the detailed billing records submitted to the Court reflect Class Counsel's "us[e] [of] billing judgment to ensure that duplicative and unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included." Apr. Roberts Decl. ¶ 25. Also notably, approximately 60% of the attorney time billed to this matter was by associates (one of whom was elevated to partner in December), emphasizing that Class Counsel made efficient use of attorney time. *Id.* ¶ 26. Accordingly, "Class Counsel's time spent on this matter was efficient and diligent and led to an excellent result for the Class." *Curran*, 2025 WL 3485360, at *6.

As to Class Counsel's rates, rates are "reasonable where they [are] similar to those charged in the community and approved by other courts." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011). However, "[f]irst-rate attorneys who prevail in litigation are entitled to receive fees commensurate with their skill, experience, and reputation." *LA Int'l Corp. v. Prestiage Brands Holdings, Inc.*, 168 F.4th 608, 626 (9th Cir. 2026).

Here, the blended hourly rate for Class Counsel's work is $737.20. Apr. Roberts Decl. ¶ 26.[3] California courts have found Class Counsel's rates to be fair and reasonable. *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (finding Bursor & Fisher's blended hourly rate of $634.48 to be reasonable); *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2022 WL 2288895, at *9 (C.D. Cal. Jan. 12, 2022) (finding Bursor & Fisher hourly rates ranging from $250/hr to $1000/hr as "reasonable compared to other awards in California courts"); *Elder v. Hilton Worldwide Holdings, Inc.*, 2021 WL 4785936, at *9 (N.D. Cal. Feb. 4, 2021) (finding Bursor & Fisher rates ranging from $200/hr to $1000/hr "are reasonable"); *Hendricks v. Starkist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ("The Court further finds that the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation.").

California courts have likewise sustained rates similar to Class Counsel's. *See, e.g.*, *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, 2024 WL 4267431, at *5 (C.D. Cal. Sept. 17, 2024) (approving rates of "partners with hourly rates in the range of $745 to $1,380, associates in the range of $345 to $720, and paralegals/research staff in the range of $345 to $535"); *Katz-Lacabe*, 2024 WL 4804974, at *5 (finding same rates were "in line with those prevailing in this District for similar services by lawyers of reasonably comparable skill, experience, and reputation"); *Curran*, 2025 WL 3485360, at *6 (approving rates of up to $1,350 for partners, $850 for associates, and $475 for paralegals); *Gamino v. KPC Healthcare Holdings, Inc.*, 2023 WL 3325190, at *6 (C.D. Cal. Mar. 11, 2023) (sustaining rates "ranging from $280 to $1,050"). And based on Class Counsel's experience, Class Counsel's hourly rates are reasonable compared to other legal fees charged in

---

[3] Class Counsel's lodestar here is calculated using their current billing rates. Apr. Roberts Decl. ¶ 26. "The Supreme Court has held that when determining a reasonable attorney's fee, 'the application of current rather than historic hourly rates' is 'an appropriate adjustment for delay in payment.'" *S.G. v. City of Los Angeles*, 2024 WL 5286227, at *9 (C.D. Cal. Nov. 26, 2024) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also*, *e.g.*, *Curran*, 2025 WL 3485360, at *6 n.1 ("The Court finds it appropriate for Class Counsel to use their current hourly rates to calculate the lodestar on all time spent since the inception of the case to account for delay in payment."); *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992) ("We long have recognized that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds.").

similar matters. *See* Apr. Roberts Decl. ¶¶ 31-34, *id.* Exs. 5-8.

Thus, Class Counsel billed a reasonable amount of time to this matter at reasonable rates.

**B.     All Relevant Factors Support Applying A 2.23 Multiplier To Class Counsel's Lodestar**

The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (cleaned up); *see also Morales*, 96 F.3d at 364. In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002). Multipliers in the "range of 1.0-4.0" are considered "presumptively acceptable" in this Circuit. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014).

Here, Class Counsel seeks a modest 2.23 multiplier over their base lodestar fee of $431,407.50. Apr. Roberts Decl. ¶ 27. Each of the factors Courts evaluate in determining whether a multiplier is proper has been discussed above, and all weigh in favor of applying the modest multiplier here. *See* Argument § I, *supra*. Indeed, multipliers of 2.23 or higher are commonly awarded. *See, e.g.*, *McKnight v. Hinojosa*, 54 F.4th 1069, 1077 (9th Cir. 2022) (affirming fee award with 2.9 multiplier); *Vizcaino*, 290 F.3d at 1051 n.6 (finding no abuse of discretion in awarding a 3.65 multiplier); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (1st Dist. 2008) (affirming multiplier of 2.5 and noting that "multipliers can range from 2 to 4 or even higher"); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (3d Dist. 2009) (finding "nothing wrong" with 2.52 multiplier in class action); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85).

Moreover, courts routinely include the time class counsel projects to spend on a matter in the lodestar cross-check. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods.*

*Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement"); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) (including, over the defendants' objection, "125 anticipated future hours" to be spent on "communicating with the settlement administrator and responding to inquiries from class members" in the lodestar calculation); *Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *11 (N.D. Cal. Dec. 31, 2019) (including "an estimate of 250 hours for future work to complete Settlement's claims process through 2026" in the lodestar calculation). Here, Class Counsel anticipates spending at least an additional 50 hours drafting the final approval motion, preparing for and attending the Final Approval Hearing, and assisting with settlement administration and Settlement Class Member inquiries. Apr. Roberts Decl. ¶ 27.

Including an additional 50 hours at Class Counsel's blended hourly rate of $714.72 would increase Class Counsel's lodestar to $468,267.50 and lead to a lodestar multiplier of 2.06. *Id*. This further supports the reasonableness of Class Counsel's fee request.

### III.  CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFITS OBTAINED

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $26,933.86 in prosecuting this litigation on behalf of the Class. Apr. Roberts Decl. ¶ 26; *see also id.* Ex. 4. The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). These expenses include (i) court fees; (ii) research fees; (iii) mediation and service fees; and (iv) travel expenses related to attending the mediation. Apr. Roberts Decl. ¶ 28. Each of these expenses was necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred. *Id.*

## IV.    PLAINTIFF'S REQUESTED SERVICE AWARD IS REASONABLE

This Court should also approve the requested $5,000 Service Award to the Plaintiff as it is just, fair and reasonable.  Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *13 (N.D. Cal. Apr. 26, 2013) (granting request for $5,000 incentive award).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.  Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  See *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also* District Guideline 7.

Here, Plaintiff seeks a $5,000 incentive award.  The significant result achieved for the Settlement Class would not have been possible without Plaintiff's important contributions.  Apr. Roberts Decl. ¶¶ 36-37.  Plaintiff has kept in constant communication with counsel, has reviewed important documents—including the Complaint and Settlement—and assisted with Class Counsel's investigation of this matter, and provided her browser traffic from the Los Angeles Times website that supported her allegations. Apr. Roberts Decl. ¶ 38; Mirmalek Decl. ¶¶ 4-6, 8.  Plaintiff was also prepared to sit for a deposition and testify at trial were this matter to go forward.  Roberts Decl. ¶ 38; Mirmalek Decl. ¶ 6.

In light of Plaintiff's substantial contributions in this case, courts in the Ninth Circuit have held that "[a]n incentive award of $5,000 is presumptively reasonable." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (awarding $25,000 incentive awards to lead plaintiffs).  Indeed, courts in this district have held that "incentive awards" of up to "$10,000" fall within the "typical[] range." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–67 (N.D. Cal. 2015).  And the Service Award here represents approximately 0.13% of the Settlement Fund, which likewise bolsters the reasonableness of the Service Award.  *See*, *e.g.*, *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *13 (C.D. Cal. Aug. 4, 2015)

(granting service awards and noting the service awards, "which constitute 1.5% of the maximum settlement amount, do not significantly reduce the amount of settlement funds available to the rest of the class").

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court (i) award $962,500.00 in attorneys' fees to Class Counsel; (ii) award $26,933.86 in costs and expenses to Class Counsel; (iii) award a $5,000 service award to Plaintiff; and (iv) enter the [Proposed] Order in the form submitted herewith.

Dated: April 3, 2026                    Respectfully submitted,

                                        **BURSOR & FISHER, P.A.**


                                        By: */s/ Max S. Roberts*

                                        Max S. Roberts (State Bar No. 363482)
                                        1330 Avenue of the Americas, 32nd Floor
                                        New York, NY 10019
                                        Telephone: (646) 837-7127
                                        Facsimile: (212) 989-9163
                                        E-mail: mroberts@bursor.com

                                        **BURSOR & FISHER, P.A.**
                                        L. Timothy Fisher (State Bar No. 191626)
                                        Kaili C. Lynn (State Bar No. 334933)
                                        Joshua R. Wilner (State Bar No. 353949)
                                        1990 North California Blvd., 9th Floor
                                        Walnut Creek, CA 94596
                                        Telephone: (925) 300-4455
                                        Facsimile: (925) 407-2700
                                        E-mail: ltfisher@bursor.com
                                               klynn@bursor.com
                                               jwilner@bursor.com

                                        *Class Counsel*